(September 23, 1913.)

LEE MANTLE, Respondent, v. JACK WAITE MINING
COMPANY, LIMITED, a Corporation, Appellant.

[135 Pac. 854.]

CORPORATIONS—DELINQUENT ASSESSMENTS—SALE—EVIDENCE—MOTION
FOR JUDGMENT ON PLEADINGS.

1.   Where several parties as promoters enter into a contract with
the owner of mining property for the purchase of certain mining
claims, and the promoters and the owner of the mines agree that a
corporation will be formed by the promoters and stock will be issued
and sold with a fixed capital, and that the owner of the mine will
transfer the claims to the corporation after organization, and that
the stock will be nonassessable until the promoters had paid 25 cents
a share for the stock, and the owner accepted $33,000 worth of stock
on the option, and the owner deeds the property to the corporation,
which accepts the conveyance and ratifies and affirms the contract and
accepts the benefits and conditions of the acts and contract of the
promoters, and stock is sold and issued to a purchaser with full
knowledge of the transaction, such purchaser may maintain an action
for the enforcement of the contract made by the promoters and rati-
fied and affirmed by the corporation.

2.   Where a corporation is organized under the laws of this state,
and ratifies and affirms a promoters' contract as to assessments, such
corporation is bound by the terms of the promoters' contract which
provides "that the stock issued to us shall be subject to assessment
up to 25 cents per share prior to any assessment on any other stock
issued by the aforementioned company, until we have paid a total
of 25 cents per share, when all the stock of the company will be
subject to the assessment at the same time and on the same basis,"
and such assessment up to 25 cents is not paid and an assessment
is levied against the general stock of the corporation, such latter
assessment is void.

3.   Sec. 2758, Rev. Codes, which provides that the notice of sale
of stock in a corporation when published in a daily newspaper must
be published for ten days, excluding Sunday and legal holidays,
previous to the day of sale, and sec. 2764, which provides that the
notice of assessment may be extended from time to time for not
more than thirty days by order of the directors, and no such order
is effectual unless notice of such extension or postponement is ap-
pended to and published with the notice to which the order relates,

construed with sec. 2765, which provides no assessment is invalidated by a failure to make publication of the notices, nor by the nonperformance of any act required in order to enforce the payment of the same; but in case of any serious error or omission in the course of proceedings for collection, all previous proceedings except the levying of assessment are void, and publication must begin anew, provide the procedure in the sale of stock of corporations.

4. Sec. 2764, Rev. Codes, wherein it is provided, "but no such order is effectual unless notice of such extension or postponement is appended to, and published with, the notice to which the order relates," is mandatory, and by a failure to comply with the same the sale is void.

APPEAL from the District Court of the First Judicial District for Shoshone County. Hon. W. W. Woods, Judge.

An action to enjoin the sale of stock of a corporation. Judgment for respondent. *Affirmed.*

A. G. Kerns, for Appellant.

Sec. 2766, Rev. Codes, is mandatory in its provisions that no action must be sustained to recover stock sold for delinquent assessments, upon the ground of illegality in the assessment, illegality or defect in the notice of sale or in its publication, or defect or illegality in the sale, unless the party seeking to maintain such action first pays or tenders to the corporation, or the party holding the stock sold, the sum for which the same was sold, etc. The complaint did not show such a tender of payment and therefore did not state a cause of action. (*Burnham v. San Francisco Fuse Mfg. Co.,* 76 Cal. 26, 17 Pac. 939.)

Corporations act only by resolution of their governing board when duly assembled, or by action of duly constituted agents within their authority. (10 Cyc. 265, 760.)

"A corporation is not liable on contracts of promoters until adopted." (1 Thompson on Corporations, 484–490.)

The admissions or declarations of the stockholders of the appellant company in signing the statement called by the plaintiff a promoters' contract do not bind the corporation.

(1 Cook on Corporations, secs. 11, 48; 3 Cook on Corporations, secs. 709, 726.)

"The promoter, though he purport to act on behalf of the projected corporation and not for himself, cannot be treated as agent because the nominal principal is not then in existence; and hence when there is nothing more than a contract by a promoter, in which he undertakes to bind the future corporation, it is generally conceded that it cannot be enforced." (1 Thompson on Corporations, sec. 91.)

A corporation is a distinct entity, to be considered separate and apart from the individuals who compose it, and is not to be affected by the personal rights, obligations and transactions of its stockholders; and this whether said rights accrued or obligations were incurred before or subsequent to incorporation. (*Moore etc. Hardware Co. v. Towers Hardware Co.,* 87 Ala. 206, 13 Am. St. 23, 6 So. 41; Morawetz on Private Corporations, 227–234, 547–549; *Hawkins v. Mansfield G. M. Co.,* 52 Cal. 513, 13 Morr. Min. Rep. 581; *Gent v. M. & Mut. Ins. Co.,* 107 Ill. 652; *Penn Mut. Co. v. Hapgood,* 141 Mass. 147, 7 N. E. 22.)

James A. Wayne and John P. Gray, for Respondent.

The corporation was estopped by its acts and representations and by the contract of the promoters which it had in its possession, and which the corporation through its officers had presented to Mr. Mantle, from levying an assessment upon his stock until the stock of the promoters had been paid up to the sum of 25 cents per share. The assessment was therefore absolutely void, and no tender of the assessment was necessary, the corporation never having acquired jurisdiction to sell the stock. (*Herbert Kraft Co. v. Bank of Orland,* 133 Cal. 64, 65 Pac. 143.)

Sec. 2766 refers only to a case brought by a stockholder to recover back stock which has been sold, where the sale is irregular, and not where the corporation had by its contract or act divested itself of the power and authority to levy an as-

sessment. (*Wall v. Basin Min. Co.,* 16 Ida. 314, 101 Pac. 733, 22 L. R. A., N. S., 1013.)

This court has held in *Corcoran v. Sonora Mining & Milling Co.,* 8 Ida. 651, 71 Pac. 127, 60 L. R. A. 283, that the assessment and sale of stock in a corporation is a proceeding to enforce a forfeiture, and that the statute in such a case must be strictly adhered to, both in the levy and collection of the assessment; and clearly this was not done in this case. (*San Bernardino Inv. Co. v. Merrill,* 108 Cal. 490, 41 Pac. 487.)

Time was made the essence of this option, but even in the absence of a provision to this effect, it was within the power of Mantle to forfeit the option at that time and retain all payments made thereunder. (*Settle v. Winters,* 2 Ida. 215 (199), 10 Pac. 216; *Durant v. Comegys,* 3 Ida. 204, 28 Pac. 425.)

STEWART, J.—This action was commenced on December 6, 1911, in the district court of Shoshone county by the respondent, Lee Mantle, against the appellant, Jack Waite Mining Company, Limited, to restrain and enjoin the appellant company from selling 75,750 shares of stock of the respondent for the amount of an assessment of two cents per share, levied October 14, 1911, and made payable November 18, 1911, and providing for the sale of delinquent stock on the 7th of December, 1911, to pay delinquent assessments.

Issues were formed and trial was had and on April 3, 1913, judgment was entered for plaintiff setting aside the sale of said stock and declaring the sale null and void, and decreeing a certain so-called promoters' contract to be a valid and binding agreement upon the defendant corporation.

The facts as found by the trial court are as follows: Prior to November 1, 1909, Lee Mantle, of Butte, Montana, was the owner of the Bullion, the Croesus, seven-eighths of the Mantle Fraction and thirteen forty-eighths of the Lucky Boy mining claim, known as the Jack Waite property, in Shoshone county. On November 1, 1909, Mantle entered into a lease and agreement giving to Patrick Burke an option to purchase for the sum of $187,000, which said sum was

to be paid by said second party in the amounts and upon the dates following: On or before November 1, 1909, $11,500; on or before January 21, 1910, $15,000; on or before March 21, 1910, $30,000; on or before August 21, 1910, $60,000; on or before February 21, 1911, $70,500. It was provided that the deed should be  placed in escrow with the First National Bank of Butte to be delivered upon the full payment of the purchase price.  The option contained a provision as to making time the essence of the agreement.  This is as follows:

"Time is the essence of this agreement and any failure on the part of the said second party to do or perform any term, covenant or agreement, to be by him kept or performed under the terms of the above and foregoing lease, or any failure of the said second party to pay the said purchase price for the said mining interests hereinabove described in the lease and option hereinbefore contained within the time and in the amounts hereinabove stated, shall at once terminate said lease and said option and all the rights of said second party hereunder, it being expressly understood that the lease and option are to be taken together as parts and portions of one single contract, and that the termination of the lease, otherwise than by purchase under the option, shall terminate said option and the said first party shall no longer be bound thereby."

"It is expressly understood and agreed that a failure on the part of the second party to make any of the payments herein provided for, in the amount and within the time hereinabove set forth, shall, in addition to terminating this lease and option, also forfeit all prior payments to the said first party; and in the event of this option being terminated through the failure of said second party to make any one of the payments herein provided for, he shall not be held liable for the payments remaining unpaid, except as herein provided."

After the execution of this written lease and agreement, Patrick Burke, Fritz Marschante, Robert Sheffels, Louis Adams and other persons joined together for the purpose

of promoting and organizing a corporation to acquire the mining property of Mantle, together with other interests therein, and pursuant to arrangements and agreements made between the promoters the Jack Waite Mining Company, Limited, was incorporated under the laws of the state of Idaho, with a capital stock of $1,500,000. At this time Burke represented to the promoters who joined him in the organization that the purchase price of the entire property, both the interests of Mantle and other outstanding interests, was the sum of $250,000. About the time of the promotion and organization of the company, the promoters subscribed for 1,000,000 shares of the capital stock of the corporation then being formed, and at that time the agreement between the promoters was that they would advance the sum of seven and one-half cents per share for the 1,000,000 shares, and that thereafter they would pay the difference between the seven and one-half cents per share and 25 cents per share. Or, in other words, that the promoters should pay sufficient money to equal the cost of the mining property.

Thereafter, in the month of October, 1910, the promoters, or a large number of them, reduced to writing the agreement in words and figures as follows:

### "PROMOTERS' CONTRACT.

"We, the undersigned subscribers, for seven and a half cent promotion stock in the Jack Waite Mining Company, Ltd., hereby agree that the stock issued to us shall be subject to assessment up to twenty-five cents per share prior to any assessment on any other stock issued by the aforementioned company, until we have paid a total twenty-five cents per share, when all the stock of the company will be subject to the assessment at the same time and on the same basis. We agree to accept certificates bearing this provision on them."

This agreement was in substance, as reduced to writing, the same as the agreement made between the promoters at the time of the organization of the corporation. At the time the said agreement had been reduced to writing none of the

1,000,000 shares of the stock had been issued to the promoters of the corporation.

Subsequent to the organization of the corporation and prior to the time the property was paid for and the deed secured the corporation, acting through its board of directors, all of whom, or practically all of whom, were among the promoters, sold large amounts, approximately 400,000 shares, of the capital stock of the company, which had theretofore been placed in the treasury, at prices from 50 cents to 70 cents per share. All the stock so sold netted the company 50 cents per share. The sales were made for the greatest part by the promoters, who themselves received as a commission for the sale of the stock the difference between the 50 cents per share and the price at which the same was sold, and Burke, president of the company, Sheffels, vice-president, Marschante and Davidson, directors, and all of the other directors, received personal commissions from the sales of said treasury stock, either in cash or stock, and that until approximately 400,000 shares of said stock was paid the company did not have title to any property whatsoever, but only an option thereon.

The court further finds that the agreement reduced to writing in October, 1910, was used by Sheffels, Marschante, Burke and the other promoters for the purpose of selling the treasury stock of the company and was exhibited by them to various persons whom they were seeking to interest in the treasury stock; that the purpose of the agreement was to raise money by the sale of treasury stock and also to secure a subscription to the treasury stock from Mantle; that the promoters of the corporation who were in control as officers and who constituted all the officers, immediately after the organization of the corporation, began the sale of the treasury stock and used the funds received therefor in making payments upon the purchase price of the mining claims, both to Mantle and the other owners; that the corporation was organized on or about November 18, 1909, pursuant to the agreement made between the promoters and for the purpose of taking over the lease and option given by Mantle to

Burke and for acquiring the property from Mantle and his associates; that at the time the corporation was organized the promoters had no right, title or interest or claim of any character in and to the mining claims, either at law or in equity, save and except under the agreement between Burke and Mantle and the other owners; that the promoters did not at that time or at any time own any of the lode claims, and did not convey or attempt to convey any interest therein to the corporation in exchange for the said 1,000,000 shares of stock, and that they paid no other or different consideration for the said 1,000,000 shares than the sum of seven and one-half cents per share and one assessment thereon; that about the 26th day of November, 1910, and after the 1,000,000 shares of stock had been subscribed for, an election was held and Sheffels, Burke, Davidson, Schmitz, Kiebler, Lancaster and Marschante, all promoters, were elected as directors of the corporation, and immediately qualified and continued to serve down to the 13th of July, 1911; that on the date first mentioned Burke was elected president, Sheffels vice-president and Schmitz secretary and treasurer; that they immediately qualified and continued to serve as such officers until the 13th of July, 1911; that at the organization meeting of the corporation held November 26, 1909, the corporation agreed to purchase the lease and agreement from Burke for the sum of one dollar; that at that time the subscription of 1,000,000 shares by the promoters was confirmed and ratified, and the remaining 500,000 shares of capital stock were placed in the treasury to be thereafter sold to raise money to develop and operate the mining claims; that the payment due in the month of August, 1910, was not made at that time and Mantle granted Burke various extensions, and the payment due in August was not made until on or about the 2d of November, 1910. There were not sufficient funds on hand to make the payment even in November, and pursuant to the agreement made therefor between the promoters in October, 1910, an assessment of two cents per share was levied against the 1,000,000 shares of the promoters' stock, all of which was paid by the promoters, a total of $20,000, and the secretary and treas-

urer thereupon issued to each of the promoters a receipt for
the said two-cent assessment on his subscription, in words
and figures as follows:

"JACK WAITE MINING COMPANY.

"Wallace, Idaho, Nov. 2, 1910.
"Received of ......................................
............... .............. .........Dollars ($........)
being two (2) cents per share assessment on your subscrip-
tion of ...... shares of Jack Waite Mining Company, Ltd.,
Stock.

"....................,
"Secy-Treas."

The court further finds that 500,000 shares of the capital
stock were placed in the treasury to be sold for the purpose
of raising funds with which to operate and develop the mining
claims, and with the knowledge of the corporation the pro-
moters, acting as the agents of the corporation in the sale
of the treasury stock and authorized by the corporation to
act as such agents, represented to the purchasers of said stock
that the treasury stock would and could not be assessed until
the promoters' stock had been paid up to 25 cents a share.  On
the 21st of April, 1910, at a special meeting of the directors,
300,000 shares of the treasury stock were authorized to be
sold at 65 cents per share, and the corporation agreed to pay
15 cents per share in cash as commission, and thereafter at
a special meeting of the directors on January 25, 1911, an
additional 100,000 shares of the treasury stock was authorized
to be sold under the same conditions and for the same price.
On or about the 1st of November, 1910, the defendant corpo-
ration had no money, or practically no money, left in its
treasury, and Burke, president of the corporation, acting
within the scope of his authority, represented to Mantle that
the promoters of the corporation had made and entered into
the subscription agreement whereby they agreed that the
promoters' stock be assessed up to 25 cents per share before
any of the treasury stock was assessed, and at that time rep-

resented to Mantle that the company desired, if possible, that he should subscribe to some of the treasury stock, and that he might have the same for 50 cents per share, the net price to the company. Burke represented to him that the corporation and officers were responsible and that no assessment would be issued upon any of the treasury stock until the full sum of 25 cents per share was paid by the promoters upon the promotion stock, and thereupon, in response to the solicitations of Burke, respondent Mantle wrote a letter to Burke in which he agreed to subscribe for 40,000 shares of stock provided the company would raise the money and pay the balance due him and his associates in cash. The court finds that the letter was written solely upon the representations made by Burke to Mantle that the agreement between the promoters had been made and entered into. At that time Burke was president and advised Mantle that he would, prior to making the final payment and in order to satisfy Mantle of the fact that the agreement had been made, bring to Butte some of the other directors to supplement the representations made by Burke; thereafter and on the 20th of February, 1911, one day prior to the date when the last payment on the option was due, and upon the failure to make which Mantle could have forfeited the same, Burke, accompanied by Sheffels, Marschante and one Adams, three of the promoters of the corporation and directors, went to Butte, and there called upon Mantle; at that time the defendant did not have in its treasury sufficient funds to make the payment. At that time Burke again represented to plaintiff that the agreement of subscription had been made between the promoters holding the 1,000,000 shares of stock hereinbefore referred to, and that no assessment would be levied upon the treasury stock until the full sum of 25 cents per share was fully paid by the promoters. At that time Sheffels, Marschante and Adams were introduced to the plaintiff as directors of the corporation, and they also made to plaintiff the same representations and assured him that the contract of the promoters had been entered into and that said 1,000,000 shares of stock were liable upon subscription therefor for the full sum of 25 cents per

share prior to any assessment whatever being levied upon the other stock; and Burke and Sheffels and Marschante, acting as agents of the defendant company and as officers, by their representations induced the plaintiff to subscribe for 66,000 shares of the capital stock of the company at the price of 50 cents per share, a total of $33,000, and the last payment was made by the delivery to plaintiff of 66,000 shares of the company's stock and the balance of said payment in money, and the deed to the property delivered by plaintiff to Burke, Marschante and Sheffels. The court finds that plaintiff was induced to make the subscription and to waive the right to require the balance of the payment to be made in cash wholly by virtue of the representations so made to him, and because of the subscription agreement; that on the 20th of February, 1911, there was due upon the option the sum of $55,240.04, and that Burke, Sheffels and Marschante acted, in going to the city of Butte and in dealing with Mantle, for and on behalf of the corporation in the sale of treasury stock, and with the knowledge and under the authority of the corporation; that Burke, Marschante and Sheffels represented to Mantle that the certificates of stock to be issued to the promoters would bear upon their face the provision required by the agreement of subscription, and that the written contract made in the month of October, 1910, was at all times on file in the office of the defendant company at Wallace, Idaho; that Mantle applied upon the amount due upon the last payment upon the contract the sum of $33,000; that in the sale to the plaintiff by Burke, Sheffels and Marschante of said 66,000 shares of the capital stock, and in making the representations to Mantle relative to the promoters' contract, they acted as officers, directors and agents of the defendant corporation, and that Mantle, relying upon the representations and assurances and solely because thereof, and believing that any stock purchased by him would not be assessed until the promoters had paid the assessment upon the 1,000,000 shares of stock up to the total of 25 cents per share, purchased from said corporation the said 66,000 shares of its treasury stock for $33,000. On the 9th of March, 1911, approximately

two weeks after having made the representations to Mantle, the defendant company's board of directors pretended to hold a meeting, at which were present Marschante, Burke, Sheffels, Schmitz and others, and at that time authorized the issuance of the promoters' stock to the amount of 1,000,000 shares; that the corporation from time to time issued the said million shares, but did not place on the certificates the provisions which the promoters had agreed should be placed thereon, although the corporation had full knowledge and notice of the agreement and had the same in its possession, and that the board of directors was composed at that time, with one exception, of persons who had signed the promoters' contract, and that the other director had full notice and knowledge of the agreement and participated in the drawing of the same.

The court further finds that the defendant had never made any effort whatever to collect from the promoters any portion of the unpaid balance due upon the 1,000,000 shares of stock, and that the promoters never paid anything on the subscription except the sum of seven and one-half cents per share, and the additional sum of two cents per share, being the assessment levied in the month of October, 1910, a total of $95,000; that on July 13, 1911, the annual meeting of stockholders of the corporation was held at Wallace; that at that time there was laid before the stockholders and read to them the promoters' agreement; that the meeting was attended by a large number of the stockholders who had purchased treasury stock; that at the meeting the agreement was discussed, and a number of the promoters and officers, including Marschante, who was then serving as director and seeking re-election as a director, were present, and Marschante announced at the meeting that the promoters were liable under the contract to the corporation, and H. N. Martin, attorney for the corporation and representing a number of the promoters, stated that the agreement was binding upon them. The court further finds that a large number of the promoters are solvent, and that the balance due upon their subscription could be collected by the corporation; that some of the

directors of the corporation threatened to levy an assessment on all the stock of the corporation, and thereupon Mantle served upon the defendant and upon Sheffels, president, and the other directors, notice requiring them as directors to proceed to collect from the promoters of the corporation and the subscribers of said 1,000,000 shares of stock the balance due thereon, and protesting against the levying of any assessment on said stock of said corporation until the promoters had lived up to their agreement to pay assessments upon the 1,000,000 shares of stock up to 25 cents per share.

The court further finds that on October 14, 1911, a special meeting of the directors was held at Wallace, Idaho, all directors being present, the purpose of the meeting being the consideration of the levying of an assessment upon all of the capital stock of said corporation; that at that meeting the plaintiff appeared by James A. Wayne, his attorney, and objected to the levying of any assessments upon the capital stock of said corporation until the promoters thereof and the subscribers for said 1,000,000 shares of stock had paid their assessment in conformity with the terms of the subscription agreement, and at the same time objected to the corporation or its board of directors pledging the credit of said corporation or borrowing money thereon, or incurring any debts in behalf of the corporation until the corporation had used every effort to collect from the subscribers to the 1,000,-000 shares of stock. Notwithstanding the objections and plaintiff's protest against the levying of said assessment, an assessment of two cents per share upon all the capital stock of said corporation was levied. By the order levying the assessment the board of directors did not designate any newspaper in which either the notice of assessment or notice to delinquent stockholders should thereafter be published; thereupon the secretary of the corporation caused to be published in the "Wallace Miner," a weekly newspaper published at Wallace, a notice of assessment; the notice of assessment was published in the "Wallace Miner" on October 26th and each week thereafter until November 23, 1911, although by said notice of assessment the assessment

on the stock had become delinquent on November 18th; after the assessment had become delinquent a notice to stockholders was published in the "Wallace Miner" on the 23d of November, 1911, and the 30th of November, 1911, in which notice the date when delinquent stock would thereafter be sold was fixed and named as December 7, 1911. On the 6th day of December, before the delinquent sale had been held, an injunction *pendente lite* in this action was issued against the corporation's selling the stock of Mantle. A bond was given as required by the injunction order, and on the 6th of December, 1911, summons and complaint together with copy of the injunction and the moving papers were served upon the defendant corporation. On December 5, 1911, a special meeting of the board of directors was held at Spokane, and the date fixed for the sale of the delinquent stock was postponed until January 3, 1912, the sale being postponed, for the reason that the required notice to delinquent stockholders had not been given; between the 5th of December and the 3d of January the publication of the notice to delinquent stockholders was continued with an addition thereto containing the time of sale. The corporation did not, subsequent to the 5th of December, 1911, republish the notice of assessment or notice to delinquent stockholders. On the 3d day of January, 1912, a sale of delinquent stock of the corporation was held at the courthouse at Wallace, at which sale were present Sheffels, president, Albert A. Piller, secretary, Marschante, Schroeder and Burke, directors of the corporation, and others, and prospective bidders upon said stock; all the delinquent stock which was offered for sale, with the exception of Mantle's, was purchased by buyers at a price of about 8 cents per share, but when the stock standing in the name of the plaintiff was reached for sale the secretary of the corporation requested the assembled bidders to refrain from bidding upon plaintiff's stock, stating to the bidders that the corporation desired to get such stock into its treasury, and that thereupon no persons bid upon plaintiff's stock, and the same was bid in in the name and for the benefit of the corporation by its secretary; that prior to the sale of the stock the corpora-

tion had appeared in this action and filed both a demurrer and an answer, and that the sale of plaintiff's stock or the forfeiture thereof to the treasury was in violation of and contrary to the express orders of the injunction which had theretofore been issued on the 6th day of December, 1911, and that the plaintiff's stock so sold, 66,000 shares, was the identical stock for which the plaintiff had allowed defendant a credit of $33,000 upon the final payment for the property. In addition to the 66,000 shares above referred to, the plaintiff was, at the time of the assessment pretended to have been levied, the owner of 9,750 shares which was also covered by the injunction order of the court; that the notice to delinquent stockholders was not published for a sufficient length of time; that the stock was not sold in the ordinary way at public auction as was the other stock for delinquent assessments; that the defendant company did not again commence the publication of the notice of assessment or the notice to delinquent stockholders, and did not commence anew proceedings for the levying of any assessments.

Counsel for appellant in their brief contend that the evidence does not support the court's findings upon the following facts: 1st.    That there is no proof whatever in support of the allegations of the complaint that at the time of the organization of the company the promoters subscribed for 1,000,0000 shares and agreed to pay therefor 25 cents per share before any assessment should be levied upon the remaining shares; that the records of the company do show that 444,396 shares were subscribed and paid for by the incorporators, and the remaining portion of the million shares was directed to be sold at the same price; that the only evidence of the making of any agreement by the stockholders of the defendant corporation was the testimony that about the 1st of November, 1910, about fifteen out of one hundred and thirty stockholders of the defendant company, for the purpose of guaranteeing the payment for the property, entered into an agreement among themselves, neither the plaintiff nor the defendant being a party thereto, stating that they would allow their stock to be assessed up to 25 cents per share be-

fore any other stock of the company would be assessed. There was no consideration whatever for said agreement, the corporation at that time having no property of any kind or character, nor was there any other kind of consideration for the making of an agreement of that kind, and the corporation was never a party to the agreement and never recognized or had anything to do therewith; and it also appears that it was the understanding of the signers of said agreement that the same was not to go into effect until signed by all; that Mantle claims to have the stock from Burke on the strength of the agreement, which agreement was not made nor signed until after he had purchased or agreed to purchase his stock, and the allegation in the complaint that he was induced, on February 20, 1911, to take this stock is clearly disproved by his letter of November 4, 1910, directed to Burke agreeing to take the stock; that there was no contract relation between plaintiff Mantle and the defendant corporation until the certificates of stock issued to Mantle were signed and delivered, and when those certificates were issued to Mantle in the same form as all other stock certificates of the company, he stood on an equal footing with all the stockholders; that the evidence clearly shows that Burke falsely represented to the incorporators of the defendant company that he had secured an option in writing from Mantle to purchase the Jack Waite property for $250,000, and that Burke produced a purported agreement in writing, defendant's exhibit "1," purporting to be signed by Mantle and himself as parties thereto, and by such false representations did induce the defendant corporation and the incorporators to advance him the payments alleged to be due on said forged and fictitious agreement.

This appeal is from the judgment.

Seventy-four assignments of error are presented. Counsel for both parties discuss these different errors in groups, and we will consider the same in the order discussed.

Assignments of error 1 and 2 relate to a supplemental complaint filed by permission of the court and a motion to strike the same out. The supplemental complaint appears to con-

tain, in addition to the allegations of the first complaint, that on February 21, 1911, Mantle was wrongfully induced by false representations of the defendant and its officers to take 66,000 shares of the capital stock at 50 cents per share and credit the same on the Burke contract. It is argued that the amendment was allowed after there was a change in conditions in the relation of the parties; that the stock of Mantle had been sold between the time of the filing of the original complaint and the amended and supplemental complaint; that the pretended sale of the stock was in violation of an existing injunction order of the court.

We have examined this amendment and it is our opinion that the same is a more complete statement of the facts and that the trial court was allowed great liberality in amending pleadings, and unless the exercise of the discretion vested in the trial court denies the appellant some substantial right, it is not error. In this case we think the appellant had full opportunity to answer such allegations and in no way was denied any substantial right. (Sec. 4229, Rev. Codes; *Rankin v. Caldwell,* 15 Ida. 625, 99 Pac. 108; *Havlick v. Davidson,* 15 Ida. 787, 100 Pac. 91; *Harrison v. Russell & Co.,* 17 Ida. 196, 105 Pac. 48.)

Error 3 relates to the overruling of the defendant's demurrer to the supplemental complaint. Under this error appellant relies upon sec. 2766. This section provides: "No action must be sustained to recover stock sold for delinquent assessments, upon the ground of irregularity in the assessment, irregularity or defect in the notice of sale or in its publication, or defect or irregularity in the sale, unless the party seeking to maintain such action first pays or tenders to the corporation, or the party holding the stock sold, the sum for which the same was sold, together with all subsequent assessments which may have been paid or may be due thereon, and interest on such sums from the time they were paid; and no such action must be sustained unless the same is commenced within six months after such sale was made." Under this statute appellant urges that said supplemental

complaint does not show a tender of payment, and therefore does not state a cause of action.

Respondent answers the objection on the ground that sec. 2766 refers only to a case brought by a stockholder to recover back stock that has been sold, where the sale is irregular, and not where the corporation had by its contract or act divested itself of the power and authority to levy an assessment, and relies upon the case of *Wall v. Basin Min. Co.*, 16 Ida. 314, 101 Pac. 733, 22 L. R. A., N. S., 1013. In the Wall case, the contract which the court held precludes the company from levying the assessment was printed words upon the stock certificate, "fully paid and nonassessable." In this case there was an express contract in writing between the promoters which was presented by the officers of the corporation to Mantle, and the representations of the officers of the appellant respecting that contract induced Mantle to purchase his stock at 50 cents per share. It was a part of the contract between the promoters that this provision should be printed upon the promoters' stock, that it was assessable up to 25 cents a share, before any other stock of the company was subject to assessment, and the fact that appellant and its officers fraudulently neglected and declined to do it does not place them in any better position to resist the respondent's demand that his stock shall not be assessed until the stock of the promoters has been paid up to 25 cents per share.

In the Wall case, there was no tender nor was it held necessary, and it was held that the assessment was absolutely void. The case cited by appellant, *Burnham v. San Francisco Fuse Co.*, 76 Cal. 26, 17 Pac. 939, held: "But the assessment was valid, and it was the duty of the plaintiff to pay it. A court of equity properly refused to entertain his application for an injunction to prohibit the sale, in the absence of an allegation that he had done, or offered to do, equity. True, if he paid, there would be no sale, and he would not need the extraordinary writ; but the jurisdiction of equity does not depend upon the convenience of a party. The statutory remedy is plain, and it was intended by the legislature that this shall be the only remedy in case a valid assessment is not paid."

This case, in our judgment, does not apply to the facts involved in this case.

Assignment of error 4 is covered by other assignments.

Assignments of error 5 and 7 are based upon alleged errors of the court in allowing the introduction of irrelevant and incompetent testimony. We find, however, that these errors were as to questions asked Robert Sheffels, president of the company, on cross-examination, which tended to show that he had represented to Mantle that he had entered into the promoters' agreement; that he sold a portion of the treasury stock for sums in excess of 50 cents per share and appropriated as commissions whatever sums he got above 50 cents a share, and that the certificates of stock issued to the promoters, when issued, did not have upon them the provisions they had agreed should be contained therein or placed therein. We are of the opinion that the court did not err in permitting this evidence.

Errors 8 and 9 were questions asked Marchante, vice-president of the company, upon cross-examination, relating to statements made by him relative to a stockholders' meeting when he was an officer and director of the company, and we find no error in the questions or the evidence given.

Assignment 10 relates to a financial statement of appellant, which showed the $20,000 paid by the promoters, being the two cent assessment levied in the year 1910. Marchante, the vice-president, testified that the promoters paid the assessment and that they never considered it was an indebtedness to them from the company. Just what effect the evidence would have in the case we are not able to say at this time, but we are of the opinion that at the time it was offered it related to matters which might be material in the case.

Assignments of error 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22 and 23, inclusive, relate to the testimony of Burke, one of the directors of the defendant company, who was called for cross-examination along with the other directors. Burke was the one who originally negotiated with Mantle for the property and secured the option thereon, and who was one of the organizers and promoters of the appellant, its president for a number of years, its director at the time of the trial,

and one of the officers of the company who went over to Butte, accompanied by Sheffels and Marschante, the present president and vice-president of the corporation, to close up the deal with Mantle. The cross-examination of a director is authorized by Sess. Laws 1909, p. 334.

When this evidence was offered, counsel for the respective parties agreed that the men whose names are mentioned on page 60 of the minute-books are the board of directors of the corporation: Robert Sheffels, Fritz Marschante, J. P. Schroeder, Henry Treede, E. Winsby, Patrick Burke, and P. L. Spaulding. This admission shows that Burke was a director of the corporation.

Assignments of error 24 and 25 have no merit, as the evidence involved in the questions related to the contract entered into by which the appellant acquired the property, and the appellant in its brief gives no reason why the judgment should be reversed on account of this particular evidence.

Assignments of error 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40 and 41 all relate to evidence offered in the case, and the court made findings in this case and the evidence upon the different questions that the court has made findings upon was received in support of such findings, and the findings of the court were based upon the issues in the case, and counsel have failed in their brief to call attention to any reason that would justify the reversal of the judgment because of such evidence. The evidence was in support of the issues in the case, and was material and important evidence in explanation of the relations of these parties, and what was done and said by the different parties interested in the transaction.

Assignment of error 42: This error is based upon a motion of the defendant to dismiss the action at the close of the testimony on the part of the plaintiff on the ground that the testimony shows that material facts alleged in the amended complaint were not proved nor attempted to be proved and could not be proved. The particular allegations of the complaint are paragraphs 3 and 4. In paragraph 3 the allegations are that between the 1st of November, 1909, and the 18th of November, 1909, Burke, together with Marschante, Sheffels,

Adams, Schmitz, Nordquist, Lancaster, Thennes, Dooling, Weyer, Horstman, Connelly, Hanson, Muir, Daley, Wilfred and Davidson, promoted the organization of a corporation to be known as the Jack Waite Mining Company, Limited, being the defendant herein, for the purpose of acquiring the said lease and agreement, exhibit ''A,'' and for the purpose of acquiring the lode mining claims hereinbefore mentioned. Appellant urges that it is not proved that Burke represented to the said promoters that the purchase price of all the said lode mining interests (being the property involved in this case), both the interest therein owned by the plaintiff and the interest in the said Mantle Fraction and Lucky Boy Lode, was the sum of $250,000, and for the purpose of raising sufficient funds to pay the purchase price of $250,000 a subscription list was opened and the above-named persons thereupon subscribed for 1,000,000 shares of the capital stock of the corporation, agreeing to pay therefor the sum of seven and one-half cents per share in cash, to be assessed upon said stock before assessments should thereafter be levied upon any other stock of said corporation, to be thereafter issued, up to 25 cents per share, making a total of $250,000 for the purchase price of said lode mining claims, and further agreeing to accept certificates of stock of said corporation bearing said provision.

Paragraph 4 alleges that thereafter and on the 6th day of November, 1909, as plaintiff is informed and believes, the promoters of the corporation, in order to raise sufficient funds to pay the purchase price of the aforesaid lodes, subscribed for 1,000,000 shares of the capital stock of the defendant corporation, then in process of organization, for the sum of seven and one-half cents per share, and at the same time entered into a written agreement by the terms of which said written agreement the promoters agreed that 1,000,000 shares so subscribed should upon organization of the corporation be subject to assessment up to 25 cents per share prior to any assessment being levied on any other stock which might thereafter be issued, and to accept certificates of stock bearing said provision upon the organization of the corpora-

tion, a copy of which subscription or promoters' contract is marked exhibit ''B.''

We think it proper at this stage of the case to recite evidence given by several of the promoters with reference to this matter, as there seems to be a controversy as to whether there was evidence supporting the allegations of the complaint upon which the trial court made findings.

Fritz Marschante, one of the promoters and incorporators of the company and an officer of the company upon incorporation, upon cross-examination, testifies: ''Q. Mr. Marschante, how many shares did you gentlemen that were there that night, you people, subscribe for all together? A. Well, there were supposed to be a million shares bought at seven and one-half cents per share which would bring a total of $75,000, so as to meet certain payments. Q. Payments to Mr. Mantle? A. To Mr. Mantle. But whether that stock was all subscribed for that same evening, I don't remember. Q. It was subscribed then, or some time? A. Later.''

This witness also referred to exhibit ''B'' which was the agreement among the promoters that they would pay for the the stock up to 25 cents per share, and he testifies as follows: ''Q. It was signed for the purpose of guaranteeing to these friends of yours that were buying stock that the property would be paid for? A. Yes, sir, that the property would be paid for. Q. And you used it for that purpose? A. Yes, sir.''

That this agreement was recognized, appears, and also that an assessment of two cents per share was levied upon the promoters' stock and notices of it were sent to everyone who came in at seven and one-half cents, and not to those who came in at 65 cents.

Sheffels, another party who was interested in the promotion and purchase of stock, testifies that the agreement had been made in the first place and was subsequently reduced to writing as exhibit ''B'': ''Q. As a matter of fact, you were selling stock at 65 cents a share and wanted to assure those people that the property would be paid for and that the option would not be broken; is not that true? A. It was the agreement

not to break the option.   We made that agreement among ourselves that we would stick together until the property was paid for.   Q.   And that you would ultimately pay for it yourselves?   A.   If we had to.   Q.   Yes, sir.   And finally you reduced to writing this agreement, exhibit "B"?   A.   Why, something like it.   I don't know whether it was exactly it or not."

Mr. Marschante, in explaining what took place at a meeting of stockholders, made the statement that he recognized that they were bound by that agreement—that is, the promoters—and that they always intended to live up to it. "Q.   Did they all come through with two cents a share? A.   Yes, I think they did.   Q.   All of them?   A.   Yes. Q.   That was the original plan that you would provide for that money to buy it.   A.   To pay for it, yes.   Q.   And you signed up that exhibit 'B'?   A.   That agreement was never completed, and it was never recognized by me.   Q.   But you had an understanding between you long before you signed this agreement?   A.   That it would be paid for.   Q.   That you would each be responsible up to 25 cents a share. A.   Until such time as with our own energy and our hard work it would be paid for, to raise that amount of money."

The evidence shows that Marschante signed exhibit "B" with the other parties, and that Marschante went over and presented the agreement to the appellant and induced him to subscribe to 66,000 shares of stock, and Marschante and Sheffels and the rest of the parties used this in selling this stock to the general public and to their acquaintances, notwithstanding the fact he testifies that he never considered it binding upon himself.   Yet he signed the contract and used it as an influence with Mantle in selling the stock and thereafter in disposing of the stock to the general public, and the court found that he signed the contract and was bound by it.

Burke also admitted the truth concerning the entire transaction, and that he had advised Mantle of the contract made between the original promoters who had subscribed to the 1,000,000 shares of stock, that they would pay up to 25 cents a share before any of the other stock of the company should

be assessable. Burke testifies that he told Mantle at the time the final payment was made he wanted him to take some stock and he would bring Marschante and Sheffels over to show Mantle what the understanding was about the stock, and that he would go over there; that Marschante and Sheffels went with him and assured Mantle that the contract had been made between the promoters and would be satisfactorily carried out, and that Burke testifies that the purpose of entering into the promoters' contract was to show it to the people they sold the stock to, to assure them that the property would be paid for.

Mantle testifies that Marschante and Burke made those representations and that it was under the relations of the contract of the plaintiff and the defendant, and from such acts the company became the owner of the property and the corporation accepted the same and acted under the contract and acquired the property, and it was an option made to Patrick Burke or his assigns, and the court so found, and we are satisfied that the court made no mistake in so finding, and there was no error.

Assignments of error 43 to 74, inclusive, relate to whether the evidence supports the findings and judgment of the trial court, and in our opinion the evidence is sufficient to sustain the findings of the court and the judgment.

There was some argument made by counsel in this case with reference to the agreement of the promoters as to the intention to provide as to the making of any assessment on any other stock issued until the total 25 cents per share had been paid, and that this arrangement was made by the incorporators and ratified by the corporation after organization, and it was one of the things that was presented to the plaintiff in this case at the time he became purchaser of the 66,000 shares of stock.

We think the evidence in this case shows that at the time Mantle purchased the 66,000 shares of stock for the sum of $33,000, the defendant was in default in the making of the payments required by the Burke option, and there was no money in the company's treasury with which to make the final payment. Time was made the essence of the option. But

whether that is shown, Mantle had the power to forfeit the option at that time and retain the payments made thereunder.

In the case of *Durant v. Comegys*, 3 Ida. 204, 28 Pac. 425, this court had under consideration a similar question, and the court held, in discussing *Settle v. Winter*, 2 Ida. 215, 10 Pac. 216: "It is there held that time is of the essence of the contract when the character of the property involved renders it liable to great fluctuations in value, and that this rule should be adhered to in the construction of contracts for the purchase and sale of mining property."

The evidence clearly shows that it was upon the representations of the officers of the defendant to Mantle that if he would accept shares of stock in part payment of the amount then due under the option, his stock would be nonassessable until the promoters had paid 25 cents a share for their stock. Mantle accepted $33,000 worth of stock on this option, and in this action he demands that the corporation and its officers should hold to the terms of the agreement which the parties always maintained that they intended to live up to, until some time after the stockholders' meeting of July, 1911.

So far as the action of the promoters is concerned, in promoting the transaction and the organization of the corporation and the sale of the property, it is clear from the evidence that the corporation by its acts ratified all of the arrangements of the promoters, and that the contract was intended to inure to the benefit of the future corporation when organized, and that the corporation ratified and affirmed the contract and accepted the benefits and conditions of the acts and contract of the promoters and accepted the sale of the property made by Mantle to the corporation under the contract made by the promoters and Mantle. (10 Cyc., p. 265, sec. 5; 3 Cook on Corporations, sec. 1707, p. 2213.)

We hold in this case:

1st. That the promoters' agreement was and is a valid and binding agreement; that the defendant corporation had full knowledge and notice at all times of such agreement; that the defendant corporation by its acts ratified all of the arrangements of the promoters, and that the contract was intended to

inure to the benefit of the future corporation when organized, and that the corporation ratified and affirmed the contract and accepted the benefits and conditions of the acts and contract of the promoters, and accepted the sale of the property made by Mantle to the corporation under the contract.

2d.    That after the corporation was organized under the laws of this state, and ratifies and affirms the promoters' contract, the corporation is bound by the terms of the promoters' contract, which provides "that the stock issued to us shall be subject to assessment up to 25 cents per share prior to any assessment on any other stock issued by the afore-mentioned company, until we have paid a total of 25 cents per share, when all the stock of the company will be subject to the assessment at the same time and on the same basis."

3d.    Under this limitation the corporation has no power to make an assessment until the promotion stock, as provided in the contract, has been paid up to 25 cents per share, which was not paid in this case, and has not been paid at the time the plaintiff's stock was assessed and sold; therefore the assessment was void.

The holdings above control the determination of this case, for the reason that this case cannot be maintained until the payment of the assessment of 25 cents per share.    The determination of this question makes it unnecessary to discuss or determine the other question as to the assessment of two cents per share and the sale of the property for nonpayment of such assessment.

These holdings are in accord with the findings and decree of the lower court.    The judgment is affirmed and the costs are awarded to the respondent.

Ailshie, C. J., and Sullivan, J., concur.

### ON PETITION FOR REHEARING.

(October 29, 1913.)

STEWART, J.—A petition for rehearing has been filed on behalf of appellant, and we have examined the same. We find no reason presented in the petition for rehearing except the contention "that the judgment of the lower court enjoins the appellant company from levying an assessment upon 75,750 shares belonging to the respondent."

Upon the argument of the case originally, the objection now presented was not argued or called particularly to the court's attention. The only shares of stock involved in the controversy, and against the assessment of which an injunction was issued in the case, was the 66,000 shares secured by Mantle.

The trial court should not have included in the judgment any shares other than the 66,000 shares secured by Mantle, and Finding 27 should be modified by striking out "9,750 shares" of stock named therein, and the judgment should be modified by striking out "75,750 shares" and inserting 66,000 shares, and the injunction should apply to that number of shares and none other.

It is therefore ordered and adjudged that the trial court enter judgment in accordance with the above modification, and incorporate it as a part of the judgment, after striking out the matter mentioned above.

Ailshie, C. J., and Sullivan, J., concur.

### REHEARING ON RESPONDENT'S PETITION.

(December 16, 1913.)

STEWART, J.—A petition for rehearing by counsel for appellant was filed in this case and this court held that the only shares of stock involved in the controversy, and against the assessment of which an injunction should have been issued in the case, was the 66,000 shares of stock secured by

Mantle from the promoters, and that the trial court erred in including in the judgment other shares amounting to 9,750 owned by Mantle, and the judgment was modified by striking out "9,750" shares of stock.

Thereafter attorneys for respondents filed a petition for rehearing, which was granted, and this branch of the case was thereafter reargued. We have examined this question again, and see no merit in the showing made and argument advanced. The opinion filed upon appellant's petition for rehearing is *affirmed.*

Ailshie, C. J., concurs.

SULLIVAN, J., Dissenting.—I am unable to concur in the conclusion reached by the majority of the court to the effect that there was no merit in the petition for a rehearing. This court held in its original opinion in this case as follows: "Under this limitation, the corporation has no power to make an assessment until the promotion stock, as provided in the contract, is paid up to twenty-five cents per share, which was not paid in this case, and has not been paid at the time the plaintiff's stock was assessed and sold; therefore the assessment was void." In the original complaint, the ownership by the respondent Mantle of 75,750 shares of stock was alleged, and also that the corporation was wrongfully attempting to assess the same, thus putting directly in issue the authority of the corporation to assess not only said 66,000 shares of the treasury stock, but 9,750 shares of the common stock of said corporation. The trial court enjoined the sale of the entire 75,750 shares of stock. The amended and supplementary complaint set forth the ownership of said 75,750 shares and alleged that the same and all thereof had been sold in violation of the injunction of the court and in violation of the rights of the owner, and the complaint alleged that none of said stock was liable for assessment until the promoters had paid up to 25 cents per share on the million dollars' worth of stock issued to them. The trial court found that the promotion contract was a valid contract and binding on the cor-

poration, and that the defendant corporation had never made any effort to collect from the promoters the unpaid balance due under the promotion contract, and that they had paid nothing except 9½ cents per share, making a total of $95,000 out of $250,000 that they were required to pay under said contract.

The court also found that a large number of the promoters were solvent and the balance due on their subscription could be collected by the corporation. By Finding No. 23 the trial court found that some of the directors of the corporation threatened to levy an assessment upon all of the stock of the corporation, and thereupon the respondent Mantle served upon the directors a notice requiring them, as directors, to proceed and collect from the promoters of the corporation and the subscribers of the million shares of stock the balance due on said promoters' contract, and protested against the levying of any assessment on the general stock of the corporation until the promoters had complied with that agreement.

The trial court further found that said corporation had disregarded its duties in that regard, and pretended to levy an assessment upon all of the stock of the corporation, including said 75,750 shares owned by Mantle. The trial court issued an injunction which covered said 9,750 shares as well as the 66,000 shares, enjoining the corporation from levying an assessment on the ground that said company had not proceeded in accordance with law in making said assessment, and held in effect that no assessments could be levied upon the general stock of the corporation until the promoters' contract had been complied with.

This court in the original opinion found that said promoters' agreement was a valid and binding agreement and that the corporation had no power to make an assessment until the promoters had paid up to 25 cents per share on the stock issued to them, as provided by said contract, which had not been paid at the time the plaintiff's stock was assessed and sold, and therefore said assessment was void.

As I understand the pleadings, the validity of said assessment was fairly put in issue, and the trial court found on

such issue and it was not the intention of this court in its original opinion, nor in either of the subsequent opinions, to hold that said assessment and sale were valid as to any of the stock issued by said corporation.

The decision of the majority leaves some of the vital issues undecided. The judgment of the trial court ought to be affirmed without any modification whatever.