[S. F. No. 2184.   Department Two.—June 25, 1902.]

## D. McVICKER, Appellant, v. GEORGE S. McKENZIE, Respondent.

CONTRACT—ILLEGAL BID FOR ASSIGNEE IN INSOLVENCY—VALID SEVER-
ABLE PROVISION—EMPLOYMENT OF BIDDER AS MANAGER.—The taint
of invalidity of an illegal promise to pay another person well for his
trouble in bidding in property for the benefit of an assignee in
insolvency who made the sale, fixed at five hundred dollars, does not
attach to an agreement by the assignee that after receiving his deed
he would employ the bidder as manager at a specified monthly
salary of fifty dollars per month; and such latter agreement, carried
out by subsequent employment, is to be deemed a valid severable
provision of the contract, to pay at the agreed rate for the services
rendered.

ID.—ACCOUNTING—CHARGE FOR MONEYS RECEIVED—DISALLOWANCE FOR
SERVICES—ERROR OF COURT.—The obligation of the assignee in
insolvency, after receiving his deed, to pay for the subsequent
services of the manager employed, is equally valid with the obliga-
tion of the manager to account for moneys received from the
property illegally obtained by the assignee, the one being the con-
sideration for the other, and the obligation being reciprocal and
equally involved in the contract to employ the bidder as manager.
It was improper and unjustifiable for the court to charge the man-
ager with moneys received from such property, and to refuse to
allow him credit for his services at the rate agreed.

APPEAL from an order of the Superior Court of Napa
County denying a new trial.   Joseph P. Jones, Judge.

The facts are stated in the opinion.

T. B. Hutchinson, and F. E. Johnston, for Appellant.

H. M. Barstow, Anson Hilton, and C. J. Beerstecher, for
Respondent.

SMITH, C.—This suit was brought to recover money alleged
to be due on four separate causes of action, set up in as many
counts,—the first two on promissory notes; the third for
money expended for the use of the defendant; the fourth for
personal services, extending over a period of a little over two
years and a half, and of the alleged value of two thousand
dollars.   On the first two counts of the complaint the court

finds for the plaintiff, and that the aggregate amount due him was $1,444.50. On the third the finding is, that the plaintiff had expended for the use of the defendant the sum of $6,412.82, but that he had received on account of the defendant the sum of $8,000.18, thus leaving a balance in favor of the latter of $1,595.36. On the fourth count the finding is for the plaintiff in the sum of $300. And, as conclusion of law, it is found that defendant is indebted to plaintiff on the whole account in the sum of $158.50, for which judgment was entered. The plaintiff, being dissatisfied with this, moved for a new trial, and now appeals from an order denying the motion.

There were some errors to the disadvantage of plaintiff in the computation of interest on the notes sued upon, but these were more than compensated by error of computation against the defendant in estimating the balance due him on the third cause of action, and therefore need not be considered. The only cause of action to be considered, therefore, is the fourth; and with reference to this the only question involved is as to the validity of the contract under which the services sued for were rendered.

The only evidence on this point is that of the plaintiff, which is not contradicted. From this it appears that in May, 1896, the defendant was assignee in insolvency of George Straut, the owner of land known as the Straut Ranch,—which, with farming implements and other personal property, had been advertised for sale by the defendant as assignee; and that the defendant employed the plaintiff "to bid in the said ranch and personal property for him, defendant," and agreed "that he would pay him well for his trouble, and would pay him fifty dollars per month for his time in superintending and managing the property until such time as he, defendant, could take the management himself." In pursuance of this arrangement the property was sold and conveyed to the plaintiff by the defendant, and shortly afterwards transferred by the former to the latter. The defendant also took charge of the ranch under the agreement, and remained in charge for the time alleged in the complaint; so that it appears that at the agreed rate of fifty dollars per month there would be due him the aggregate sum of $1,543.33, against which is to be charged the difference of $1,595.36 between receipts and

expenditures from and on the ranch, as found by the court in its finding on the third count of the complaint. But the court was of the opinion that the defendant's agreement to pay plaintiff fifty dollars per month was based on an illegal consideration, and therefore void, and allowed him only three hundred dollars,—the amount admitted to be due by the answer,—charging him at the same time with the balance of receipts in the course of his employment over expenditures. This is claimed to be error by the appellant's counsel, on the grounds,—1. That the sole consideration for the plaintiff's promise to pay fifty dollars per month was the services to be rendered, and that the promise was therefore not tainted with illegality of consideration; and 2. That if the contrary be assumed, then the plaintiff's implied promise to pay over the moneys received in the course of his employment was equally tainted with illegality, and hence that it was error, in disallowing the plaintiff's claim for services, to charge him with receipts.

With regard to the latter point, the obligations of the parties after possession was taken of the land were reciprocal, each constituting the consideration of the other. No distinction can be made, therefore, between the obligation of the defendant to pay the plaintiff for his services in managing the ranch and that of the plaintiff to account for the moneys received in the course of his employment. Both originated at the same time and in the same transaction; and it makes no difference that in the one the obligation is expressed in terms, and in the other obviously implied as part of the intention of the parties. Nor is it true—as contended by respondent—that the latter obligation was not in contemplation of the parties at the time of the contract. It is clear, therefore, according to the theory of the court as to the illegality of the contract, that the plaintiff should not have been charged with the balance of his receipts over expenditures ($1,595).

This, in fact, seems to have been the view of the court in passing on the plaintiff's motion for a new trial, which was denied on the ground "that after having tried the 1st, 2d and 3d counts on the theory that they were honest transactions and an honest accounting between the parties, and giving judgment thereon accordingly, without either proof or suggestion that they were fraudulent, it is now too late . . . to

set aside the judgment, and the court is not now authorized to grant a new trial on this ground.'' But these reasons for allowing the defendant's claim would apply equally to the plaintiff's as set out in the fourth count, which was tried in the same way,—the plaintiff introducing his proofs without objection, and the defendant entering upon proof as to the state of the account, without any suggestion of fraud, and without moving for nonsuit. Had objection been made, other proofs might have been introduced by the plaintiff, and especially proof of the reasonable value of his services, as to which there was no proof offered by either party.

It is, however, argued by the respondent's counsel that the obligation to account was one that arose after the illegal contract had been consummated, and was therefore not affected by the illegality of the original transaction; and in support of this proposition the case of *McDonald* v. *Lund,* 13 Wash. 412, is cited, where, it is said, ''the authorities are collected and the whole question thoroughly considered, and the conclusion reached that subsequent transactions are not affected with the vice of the original contract''; by which we understand is meant, that while the courts will not lend their aid to enforce a contract tainted with illegality, the rule has no application, after the execution of the contract, to obligations arising under the executed contract. The argument is a strong one, and seems to be supported by the case cited and the numerous cases therein referred to; but if good, it would seem to apply as well to defendant's own obligation to pay the plaintiff for his services as to that of the plaintiff to account for the moneys received in the course of his employment. It will be unnecessary, however, under the view we take of the case, to determine this point.

With regard to appellant's other point, we do not think that the promise of the defendant to pay the plaintiff fifty dollars per month for his services as manager of the farm was in any way tainted with illegality. The contract contains two distinct stipulations, for each of which a separate consideration is expressed; and there is no reason to suppose that the expressed consideration for the one formed any part of the consideration for the other. Indeed, on this point the language of the contract is explicit; nor can the contract be otherwise construed. For plaintiff's services in purchasing the defend-

ant agreed to "pay him well for his trouble"; and the sum to be paid "was afterwards fixed at five hundred dollars," which must therefore be regarded as the whole consideration agreed to be paid for defendant's services as purchaser. It follows that there was no consideration for defendant's promise to employ plaintiff at fifty dollars per month other than the services to be rendered; and that this promise formed no part of the consideration of the plaintiff's agreement to purchase the land, and *vice versa*. This is the most obvious construction of the contract; but were it susceptible of a different construction, the rule would apply that "where a contract is capable of two constructions, the one making it valid and the other void, . . . the first ought to be adopted." Nor is it to be supposed that parties intended to violate the law any further than appears. (1 Wharton on Contracts, sec. 337.) The stipulations of the contract are therefore clearly severable, and it follows that it was void only as to the one, and valid as to the other. (Civ. Code, sec. 1599; 1 Wharton on Contracts, sec. 338; Anson on Contracts, 250 (189); *Treadwell* v. *Davis*, 34 Cal. 601, 605-606;[1] 2 K. C., 407; citing *Jackson* v. *Shaw*, 29 Cal. 272; *City Carpet etc. Works* v. *Jones*, 102 Cal. 513 et seq.)

We advise that the order appealed from be reversed.

Haynes, C., and Gray, C., concurred.

For the reasons given in the foregoing opinion the order appealed from is reversed.

McFarland, J., Temple, J., Henshaw, J.