(No. 4725.   July 5, 1927.)

MARYSVILLE DEVELOPMENT COMPANY, a Corpora-
tion, Appellant, v. MAX MAROTZ, Respondent.

[258 Pac. 180.]

WATER RIGHTS — APPEAL AND ERROR — PLEADINGS, AMENDMENTS TO —
CONFLICTING EVIDENCE, COURT'S RULING — ACTION ON CONTRACT
FOR SALE—ACRES SUSCEPTIBLE OF IRRIGATION.

1.   Matter of permitting amendments to pleadings rests in
sound discretion of trial court, and order thereon will not be dis-
turbed, in absence of abuse of discretion.

2.   Supreme court will not hold that there is no evidence to
justify trial court's findings, where such findings were made on
conflicting evidence.

3.   In action to recover alleged balance on contract for sale
of water rights, wherein defense was that lands were not sus-
ceptible of irrigation, it is duty of trial court to find specifically
number of acres susceptible of irrigation, within meaning of the
Carey Act (U. S. Comp. Stats., sec. 4685), and not the num-
ber of acres susceptible of practical irrigation.

4.   In action to recover alleged balance on contract for sale
of water rights, evidence *held* not to support trial court's finding
that only a portion of land covered by contract was susceptible
of irrigation.

APPEAL from the District Court of the Ninth Judicial
District, for Fremont County.   Hon. Geo. W. Edgington,
Judge.

Action to recover alleged balance on contract for sale of
water rights.   Judgment for defendant.   *Reversed and re-
manded.*

Publisher's Note.

1.   Discretion of court in allowing amendments, see notes in 5 **Ann.
Cas.** 674; **Ann. Cas.** 1913B, 709; **Ann. Cas.** 1914A, 26.   See, also,
21 **R. C. L.** 572.

2.   See 2 **R. C. L.** 204.

See Appeal and Error, 4 **C. J.**, sec. 2757, p. 799, n. 34, p. 800,
n. 40; sec. 2855, p. 883, n. 33.

Pleading, 31 **Cyc.**, p. 368, n. 9, p. 399, n. 83.

Waters, 40 **Cyc.**, p. 835, n. 44.

A. H. Wilkie, for Appellant.

When a Carey Act construction company has constructed its system so as to deliver water at a point within one-half mile of the entry at a proper level so as to cover the land by gravity, it has performed its duty and the settler must convey it from that point by whatever device is necessary, such as flumes, siphons or open ditches. (*Collins v. Twin Falls N. S. L. & W. Co.*, 28 Ida. 1, 152 Pac. 200; *Ricker v. Twin Falls N. S. L. & W. Co.*, 39 Ida. 93, 226 Pac. 167.)

While trial courts are, and should be, liberal in allowing amendments seasonably made, they should not be allowed when the amendments offered deny matter before admitted by the pleadings to be true. (Bliss, Code Pleading, sec. 430; *Harrison's Admrs. v. Hastings*, 28 Mo. 346; *Palmer v. Utah & N. Ry. Co.*, 2 Ida. (Hasb.) 382, 16 Pac. 553.)

"Amendments after trial are allowed only with great caution and on good causes shown." (Sutherland, Code Pleading, sec. 796, and note 149.)

N. D. Jackson and James G. Gwinn, for Respondent.

It is not error to allow an amendment of a pleading unless the other party is deprived of a substantial right. (*Mantel v. Jack Waite Min. Co.*, 24 Ida. 613, 135 Pac. 854, 136 Pac. 1130.)

Permission to amend an answer after the cause is fully tried and submitted to the court is within the discretion of the trial court, and its order will not be disturbed unless such discretion is plainly abused. (*Brun v. Evans* (Cal. App.), 251 Pac. 330.)

Pleadings are not final until after judgment. Defendant may, by amendment, withdraw one defense and set up another after reversal on appeal. (*Gould v. Stafford*, 101 Cal. 32, 35 Pac. 429.)

The exercise of the power to permit amendments rests in the sound discretion of the trial court and as a rule this discretion will not be disturbed on appeal, except in cases of evident abuse thereof, or unless the appellant shows affirma-

tively that he was prejudiced by the ruling.   (21 R. C. L. 572.)

That the appellate court will not disturb or question findings of fact predicated upon conflicting evidence where there is substantial evidence to support such findings is so fundamental and well settled that citation of authority on such proposition is unnecessary.   (*Gould v. Hill, supra.*)

When the gist of a specification of error is, that the evidence should not be believed, this calls for the weighing of the evidence.   This was distinctly the province of the trial judge, and he, having on conflicting evidence made certain findings and there being substantial evidence to support such findings, they will not be set aside.   (*Gordon v. Sunshine Min. Co.* (Ida.), 252 Pac. 870.)

The word "susceptible" as used in rule 9 of the department of reclamation of the state means, readily acted upon. (Webster's N. I. Dictionary.)

In construing a contract, statute or rule, words employed will be given their ordinary and popularly accepted meaning.   (13 C. J., p. 531; 36 Cyc., p. 1114; 6 R. C. L., p. 842; 25 R. C. L., p. 988.)

BUDGE, J.—Appellant corporation is the successor of a Carey Act construction company which contracted with the assignor of respondent's assignor for the sale of 160 shares of water rights for the sum of $3,200, to be delivered at or within one-half mile of each quarter-section of land upon which the water was to be used.   At the time of the acquirement of the contract by respondent it was rebated as to ten acres of his land and the purchase price of the water rights reduced to $3,000, two instalment payments previously made by respondent's predecessors in interest being credited to respondent on said contract.   Respondent thereafter made payments on the contract maturing in 1914, 1915 and 1916, and on or about December 16, 1919, paid appellant $800 in satisfaction of payments due in 1917 and 1918 and interest on instalments due to December 15, 1919.   No further payments were made, and on or about December 1, 1921, appel-

lant instituted this action to recover $1,500 alleged to be the balance due under the contract.

The complaint as amended prayed for judgment against respondent in the sum named, that the contract be declared a first lien and mortgage upon his lands and the water rights appurtenant thereto, and that a decree be made for the sale of the premises and the proceeds of the sale applied on the indebtedness claimed to be due, etc.

Respondent alleged as a defense in his answer that the rebate made at the time he acquired the contract was a tentative or temporary rebate, it being agreed that an actual survey and measurement would be made as soon as conditions would permit, to determine the number of acres of respondent's entry susceptible of irrigation, the contract price to be rebated accordingly; that it was falsely and fraudulently represented to respondent at the time of the making of the rebate, for the purpose of inducing him to purchase the water contract, that all of the lands of his entry, except 10 acres, were susceptible of irrigation under the canal used by appellant to convey its water; that such representations were known to be false and fraudulent, but that respondent, relying thereon and in ignorance of the fact that but 88 acres of his entry were susceptible of irrigation from said canal, was induced to purchase said water contract; that the enforcement of the contract is contrary to the rules and regulations of the department of reclamation of the state of Idaho and in direct violation thereof, and particularly in violation of rule 9 of said department, providing that "an entryman shall not be required to pay for water rights for lands not susceptible of irrigation from the canals of any Carey Act system in the state. . . . . ''

The cause was tried to the court, a jury having been waived, and taken under advisement. Some fifteen months after its submission, the attorney representing respondent at the trial having died in the meantime, respondent appeared by other counsel and filed a motion for permission to amend his answer by adding thereto paragraph IX–A, and

that the cause be reopened for the purpose of taking further testimony relative to the issues raised by said amendment to the answer, which admitted a settlement between appellant and respondent to the effect that $800 to be paid by respondent would take care of all payments on the water contract up to and including the payment due December 15, 1918, together with interest on deferred payments, to December 15, 1919, and that respondent made delivery of said amount to appellant, but denied that after the payment of said sum there was a balance of $1,500 remaining due; and alleged that it was agreed and understood by and between the appellant and respondent at the time said $800 was so paid that the balance due on said contract, if any, should be determined by a survey of respondent's entry by appellant, and that the contract price should be so reduced as to conform to the number of acres that could be reasonably and practically irrigated from appellant's source of water supply and irrigation works, and that the whole price to be paid by respondent to appellant was to be $20 per acre for the land so susceptible of irrigation, and no more; and that not to exceed 80 acres of said land can be irrigated, and that respondent had fully paid appellant and its predecessor therefor.    The motion to file this amendment was granted.

After the taking of additional testimony under the amendment to respondent's answer, the cause was again taken under advisement by the court, and findings of fact, conclusions of law and decree were entered, to the effect that there was no fraud practiced upon respondent as claimed in his answer; that the rebate agreement made at the time respondent took the premises was tentative only as to the amount to be paid on the water contract, the parties thereto agreeing and understanding that the price of $3,000 should be subject to reduction and adjustment in proportion as such lands should, upon survey thereof, be found not susceptible of irrigation from the canal used by appellant to deliver its water, said lands to be surveyed by appellant; but that said or any survey of said lands was never made by appellant,

and that only 88 acres of respondent's lands are susceptible of practical irrigation from appellant's source of water supply, and that on the basis of payments due from respondent for water delivered by appellant for so much of respondent's lands as are reasonably and practically susceptible of irrigation, the contract price had been paid in full,—by reason of which appellant should take nothing by its action, and that respondent have judgment against appellant for his costs.

[1] Appellant insists at the outset on appeal that the trial court erred in overruling its objection to the introduction of any testimony in support of respondent's original answer to appellant's complaint, for the reason that the answer did not state a defense. Before the court rendered a decision on the merits it permitted respondent to file an amendment to his answer, known in the record as paragraph IX–A, and reopened the cause for the purpose of taking additional testimony on the issues raised by the amendment to the answer. It will be noticed that some fifteen months elapsed from the time the cause was first submitted until the amendment to the answer was filed. Altogether too much time. elapsed between the submission of the cause and the filing of the amendment to the answer. Without indorsing such practice, the matter of permitting amendments to pleadings, as was done in this case, would seem to rest within the sound discretion of the trial court, and in the absence of an abuse of such discretion the order will not be disturbed. (*Brun v. Evans* (Cal. App.), 251 Pac. 330; *Mantle v. Jack Waite Min. Co., Ltd.*, 24 Ida. 613, 629, 135 Pac. 854, 136 Pac. 1130; *Mecham v. McKay*, 37 Cal. 154; 21 Cal. Jur. 177; C. S., sec. 6726.

[2] It is urged that the court erred in finding that the rebate agreement entered into between appellant and respondent in 1913, when respondent took by assignment the Carey Act entry to which reference is made in the statement of facts and at which time a rebate of 10 acres was made, was but a temporary or tentative rebate and that a further

rebate should be made when the land was surveyed, in the event that there was land in addition to the 10 acres within the entry not susceptible of irrigation; and that on or about December 16, 1919, there was no final settlement between the parties fixing a balance due from respondent in the sum of $1,500, or any amount. While it may be conceded that the evidence to support these findings is of a character that would not appeal to all minds in the same light, there is a conflict, and the trial court having made its findings upon this conflict we are not disposed to hold that there was no evidence to justify it in making the findings complained of.

The trial court found that there were but 88 acres of respondent's land included in the 160 acres susceptible of practical irrigation. Just what the trial court had in mind when it used the term "practical irrigation" we are not sufficiently informed to warrant us in reaching the conclusion that this finding should be upheld.

In *Collins v. Twin Falls etc. Water Co.*, 28 Ida. 1, 152 Pac. 200, it was held:

"To make water available under the provisions of said contract, means to bring it to the half-mile point from a quarter-section of such land, measured in a direct line, in such a way that the water can be taken from the canal, or company lateral, to a point upon the land to be irrigated so that it may be used for the purpose of irrigating the land under a gravity system through ditches to be constructed by the settler."

And in the course of the opinion in the above-entitled case it is said:

"The legal obligation of the construction company, however, did not extend further than putting the level of the water at a proper grade at the half-mile point."

In *Ricker v. Twin Falls etc. L. & W. Co.*, 39 Ida. 93, 226 Pac. 167, it is said:

"It would seem to be plain and clear from the language of the quoted provision of the contract that the construction company was only required to conduct the water to a point

higher than the land to be irrigated, not to exceed one-half mile from the quarter-section, measured in a direct line, and deliver the water to the settler, by him to be conducted to and upon his land in any manner he saw fit. In order to sustain the contention of appellant, it would be necessary to read into the state contract something that was not put there by the parties; for, according to appellant, the above language makes it the duty of respondent to construct the system so that the water may be available at a point not to exceed one-half mile from each quarter-section, from whence it may be conducted to and upon the lands of each quarter-section by surface ditches and without the use of flumes, dikes or siphons. . . . . The more one studies the object of the state contract and the provision in question, the more thoroughly one is bound to be convinced that the construction company discharged its duty when it conducted water, by its canals and laterals, to a point not to exceed one-half mile from each quarter-section, and there made it available for use by gravity, permitting the land owner to take the water and conduct it, as he saw fit, to the lands to be irrigated.''

In Carey Act contracts it is provided, among other things, that the construction company shall construct its canal system so that water conducted through the same may be available by putting the level of the water at a proper grade and at a point not to exceed one-half mile, measured in a direct line, from each quarter-section of land described in the contract.

[3]   While it is true that under rule 9 of the department of reclamation an entryman is not required to pay for water rights for lands not susceptible of irrigation from the canals of any Carey Act system, neither the rule nor the decisions of this court above referred to provide that the entryman shall not be required to pay for water rights for land not susceptible of ''practical'' irrigation. If the words ''susceptible of practical irrigation'' mean that the land to be supplied with water can be irrigated without the construction

of irrigation works, such as levees, flumes, siphons, cuts, and what not, such an interpretation of a Carey Act contract cannot be supported either by the rule above referred to or by the decisions of this court.   Lands within respondent's entry may be susceptible of irrigation, although not susceptible of "practical" irrigation.   A portion of these lands may be irrigated by gravity flow without any expenditure in the matter of construction of levees, flumes, siphons, dams, etc., which lands might be said to be susceptible of practical irrigation; while other portions of the lands may be susceptible of irrigation without unreasonable or prohibitory expenditures.   All of the lands within respondent's entry that are susceptible of irrigation are bound under the contract for the payment of the water rights as therein provided, and it was the duty of the court to find specifically the number of acres susceptible of irrigation, not the number of acres susceptible of "practical" irrigation.

[4]   It appears from the evidence that the construction company made the water available within not to exceed one-half mile from the quarter section on the north, and not to exceed the same distance on the south, of respondent's entry. There is no evidence that would support the court's finding that not more than 88 acres were susceptible of irrigation from both of these laterals.   It appears, however, that the court assumed that the lands were to be irrigated from the north lateral, and not from the Yellowstone Company's system which included both the north and the south laterals. Respondent's evidence tends strongly to prove that certain lands within his entry are susceptible of irrigation from the south lateral; in fact, he testified that one of the hills and a draw were so susceptible of irrigation.   As before stated, just what acreage of respondent's lands is susceptible of irrigation from both laterals is not, to our minds, established by a preponderance of the evidence, and, therefore, the finding of the court that but 88 acres are susceptible of irrigation, within the rule heretofore stated, is not supported by the evidence.

From what has been said it follows that the judgment must be reversed and the cause remanded, with instructions to the trial court to proceed in accordance with the views herein expressed. Costs awarded to appellant.

Wm. E. Lee, C. J., and Givens and T. Bailey Lee, JJ., concur.