## Dorsey, et al. v. Clarke.

(Decided February 7, 1928.)

Appeal from Jefferson Circuit Court
(Common Pleas Branch, Second Division).

1.  Contracts.—Whether a contract is entire or severable depends upon intention of parties, and this intention must be determined from terms of contract itself.

2.   Contracts.—There can be no recovery on an entire contract for a part performance thereof when express contract is basis of suit.

3.   Contracts.—Where contract is severable and intention of parties as expressed in contract shows that it is severable, a suit may be maintained to recover on basis of part performance.

4.   Work and Labor.—Where contract is entire and not severable, and has been only partly performed, if party has any right of recovery, it must be in suit on quantum meruit.

5.   Brokers.—Contract whereby defendants placed in plaintiff's hands 370 acres of land for purpose of subdividing it into lots or tracts, developing, advertising, and selling same, and providing that plaintiff should be paid on commission basis, and providing that 10 per cent. down payment, which otherwise belonged to plaintiff, should revert to defendants if additional payment was not made, held to be severable contract, under which plaintiff could recover for part performance.

6.   Brokers.—In action for commissions for sale of property under contract whereby plaintiff was to subdivide defendant's property and sell same at public auction, question whether party bidding in certain portions of property bid property in for defendants so that there was no sale and plaintiff was not entitled to commissions, held for jury.

7.   Brokers.—Where jury found that sale at public auction of certain property to by-bidder for owners was sale within terms of contract under which plaintiff agreed to subdivide property and sell same at public auction, plaintiff was entitled to his commission.

8.   Appeal and Error.—In action for commissions for sale of property, where jury returned verdict in favor of defendants regarding sale of certain property and allowed no commission on such sale, defendants could not complain on appeal.

9.   Auctions and Auctioneers.—Owners alleging that plaintiff auctioneer was guilty of carelessness, recklessness, negligence, and unskillfulness in conducting auction sale to such extent that he demoralized bidding, caused great slump of prices, diminished competition in bidding, and stifled and chilled sale, to great loss and detriment to owners, could not recover damages for alleged misconduct without pointing out particular loss, since any damage resulting from alleged misconduct was too speculative.

10.  Appeal and Error.—In action for commissions on sale of defendants' property, error, if any, in sustaining demurrer to defendants' paragraph in which they sought to recover alleged profits lost because of their not being able to cultivate home place for certain year held harmless, where jury found that home place was sold by plaintiff.

MILLER & MILLER and JAMES P. GREGORY for appellants.

L. R. CURTIS and FRED FORCHT for appellee.

OPINION OF THE COURT BY JUDGE LOGAN—Affirming.

On the 19th day of March, 1923, the appellants made a contract with D. C. Clarke, by the terms of which they placed in his hands approximately 370 acres of land on the Shelbyville pike in Jefferson county "for the purpose of subdividing into lots or tracts, developing, advertising, and selling according to and in the manner in which party of the second part is accustomed to subdividing, developing, advertising, and selling similar tracts." Clarke was to pay all expenses, and for his services he was to receive 7½ per cent. of the gross amount of the sale for not more than 150 acres surrounding the main residence, and 15 per cent. of the gross amount for which the balance of the land should be sold. Appellants agreed to execute deeds of general warranty to the purchasers. The property was to be sold at public auction, and appellants agreed that the highest price obtainable on sale day should be confirmed by them, regardless of what the price should be; 10 per cent. of the purchase price was to be paid on the day of the sale and 23 1/3 per cent. within 30 days. The balance was to be divided into five equal payments due in from one to five years, with a lien on the property so sold to secure the deferred payments. The 10 per cent. paid on the day of the sale was to be retained by Clarke as a part of his commission and the remainder of his commission was to be paid within 30 days, when the deed and transfer was actually made in accordance with the terms of the contract. In the event any parcel of land sold with 10 per cent. payment down should not be transferred under the contract, and in the event the additional payment of 23 1/3 per cent. was not made, then and in that event the initial 10 per cent. was to revert from Clarke to appellants. The sale of the property was to be made within 90 days.

The property was advertised and sale was made at public auction. The property was subdivided into 85 separate tracts, exclusive of the one tract known as the "home place," containing about 135 acres.

A controversy arose between appellants and appellee over the amount of commission due. The appellee claimed that he was entitled to $11,784.11 commission, while appellants resisted this claim on the ground that he did not sell all of the property. It is contended by appellants that Clarke is not entitled to commission for the sale of the home place, because they say he did not sell

the home place in accordance with the terms of the contract, or at all. Clarke, on the other hand, claims that he did sell the home place, and that it was bid in by some one for appellants for the price of $100,228.34. It is contended by appellants that Clarke is not entitled to a commission on the sale of one of the tracts of land to a Mrs. Mayberry. It is contended by Clarke that the sale to Mrs. Mayberry was a conditional sale dependent upon the consent of her husband who refused to give his consent, and that the tract was sold thereafter to another party. Another tract was purchased by one Rains, and appellants claim that Clarke is not entitled to a commission on this sale.

Before taking up the controversy over these individual tracts, it is necessary to give consideration to the contention of appellants that the contract is an entirety and not susceptible of part performance. The suit was instituted by appellee with the idea in mind that the contract was not an entirety, and for that reason he based his action on the express contract and not on any implied contract to pay a commission on such tracts as were sold. The major portion of the excellent brief filed by counsel for appellants is devoted to the contention that the suit could not be maintained because all of the property was not sold. Whether a contract is entire or severable depends upon the intention of the parties, and this intention must be determined from the terms of the contract itself. Gilmore & Co. v. Samuels & Co., 135 Ky. 706, 123 S. W. 271, 21 Ann. Cas. 611. It may be considered as well settled that there can be no recovery on an entire contract for a part performance thereof when the express contract is the basis of the suit. But, if the contract is severable and the intention of the parties as expressed in the contract shows that it is severable, a suit may be maintained to recover on the basis of part performance. Where the contract is entire and not severable and has been only partly performed, if a party has any right of recovery it must be in a suit upon quantum meruit.

Viewing the contract which is the basis of this litigation from its terms and conditions, we have reached the conclusion that it is severable. The very fact that it provides for the subdividing of the property would indicate that it was the intention of the parties that it should be sold in separate parcels, and the contract shows that it was to be conveyed in separate parcels. There is a pro-

vision that, in the event any parcel of land sold with 10 per cent. payment down should not be transferred under the terms of the contract, and in the event that the additional payments of 23 1/3 per cent. was not made, that the initial 10 per cent. paid on the signing of the contract should revert to appellants. The plain meaning of this provision seems to be that appellee should receive his commission if the trade was finally consummated, and should not receive it if the trade should not go through. This would indicate that the contract was not treated as an entirety by the parties. Yet it may be argued that, where a sale did not go through, the appellee should sell it again within the 90 days. However, if a sale should have been made within the 90-day period, and the purchaser should have failed to make the second payment at the end of 30 days, which may have been after the expiration of the contract, appellee would have been compelled, under the terms of the contract, to return the commission on the particular tract to appellants, and the appellants would have had the land left on their hands, as the contract would have expired by its terms. We believe a fair construction of the contract is that the parties intended by what is said in the contract that it should be treated as severable. The method of conducting the entire transaction indicates that it is a severable contract. If the contract was an entirety, the appellants would have been under the duty to have so treated it, and they could not carry out the sale as it related to some of the tracts and refuse to carry it out as to others, or carry it out as to some of the tracts, knowing that the others had not been sold, without recognizing the contract as severable.

Certain questions were submitted to the jury by the instructions of the court, and complaint is made by counsel for appellants about the action of the court in submitting some of the questions to the jury, as well as about the instructions submitting them. It is contended that the petition does not state a cause of action justifying a recovery of commission for the sale of the home place. An examination of the numerous pleadings show that it is alleged that the home place was sold and bid in by one W. H. Robinson, who was a by-bidder for appellants. The testimony is conflicting as to what happened at the sale, or the attempted sale, of the home place. Appellee and his witnesses testified that the home place was bid up to $330 an acre, and at that time the appellant L. L. Dorsey

notified appellee that the bid was his and besought him to obtain another bidder. The appellant L. L. Dorsey admits that he said to Clarke that it is "our" bid, but he denies that he stated to him that it was his bid. This brought about a suspension of the sale for a short while. Appellee diligently sought to induce some one else to make a bid on the home place, but was not successful. When the auctioneer was again ready to proceed, W. H. Robinson stated publicly that his bid was $320 per acre. The auctioneer cried this bid. No one offered any advance on the price, and the property was knocked off to Robinson. He was presented a contract to sign, but he refused, with the statement that Louise Dorsey, a daughter of appellants, would understand. Robinson testified that he was bidding for Louise Dorsey, and she testified to the same effect. Robinson had married a niece of appellants, and a general impression is left on the mind from reading the record that he may have been bidding for the Dorsey family. At all events, there is enough evidence in the record to authorize a jury to reach the conclusion that the bid made by Robinson was a bid for appellants. The evidence is conflicting on the point, but the lower court submitted the question to the jury, and, in our opinion, the court should have submitted the question to the jury as to whether Robinson bid the property in for appellants. Appellee treated it as a sale, while appellants contended that it was not a sale. If it were a sale within the meaning of the terms of the contract, appellee was entitled to his commission. The jury found that it was a sale, and allowed appellee the full amount of his commission based on the contract.

Appellants insist that, even if it was a question for the jury, the instructions of the court did not properly submit it for the determination of the jury. The instructions are as favorable to appellants as they had any right to ask. They appear to us too favorable to appellants. We would not be justified in disturbing the verdict of the jury on this point.

As to the Mayberry tract, the only question was whether the sale was conditional and was consented to by appellants, or whether appellants consented to a resale of the property. Appellants contend that the first sale should have been enforced by appellee, and that at the second sale this property brought $1,000 less than it did at the first sale, and that they should recover the difference from appellee. These questions were submitted

to the jury, and it found against appellants. The evidence upholds the verdict of the jury.

As to the Rains property, the jury returned a verdict in favor of appellants and allowed no commission on this sale. Appellants cannot complain about this, and appellee has no cross-appeal.

Appellants complain that the court sustained a demurrer to the fourth paragraph of the answer and counterclaim. This paragraph alleged that appellee failed to exercise reasonable care, diligence, or skill in the conduct of the sale, and was guilty of carelessness, recklessness, negligence, and unskillfulness in conducting the same to such an extent that he demoralized the bidding, caused a great slump of prices, diminished competition in bidding, stifled and chilled the sale, to the great loss and detriment of appellants. It is suggested by counsel for appellants that the lower court sustained the demurrer upon the idea that the damage resulting from such alleged misconduct was too speculative. It appears to us that the ruling on the demurrer was sound if this was the basis of the ruling. No particular item of damage is set out in that paragraph of the pleading, and we do not believe that any measure of damage could be devised to meet a condition such as was alleged in this paragraph. We do not have called to our attention any case by counsel for appellants sustaining such a plea. They cite C. J. vol. 6, p. 842, as authority. The rule as there stated is that, an auctioneer assumes an obligation to his employer to perform the service confided to him with ordinary care, diligence, and skill, and that he is responsible for loss arising from his negligence in failing to do so. We do not disagree with the rule there stated, but the authorities cited in support of the text indicate that something entirely different is meant by the text from that alleged in the fourth paragraph of the answer and counterclaim. Substantially the same rule is announced in 2 R. C. L. p. 1155. The auctioneer may be personally responsible for any loss as a consequence of his negligence, but the particular loss must be so pointed out that he may know with what he is charged. Undoubtedly an auctioneer would be responsible for selling a tract of land for $1,000, if it could be established that by due diligence he could have sold it for $1,500. But, the allegations of the fourth paragraph of appellants' answer and counterclaim do not bring it within such a rule.

Another complaint is that the court sustained a demurrer to the sixth paragraph of the answer and counterclaim. In this paragraph appellants sought to recover the alleged profits lost by them because of their not being able to cultivate the home place for the year in which the sale was made. The question as to whether the home place was sold having been submitted to the jury, and the jury having decided that there was a sale, the result of the trial shows that the error of the court in sustaining a demurrer to this paragraph, if it was an error, could not have been prejudicial to the rights of appellants.

Judgment affirmed.