(No. 7111. January 17, 1944.)

E. X. DURANT and NELLIE G. DURANT, Respondents, v. H. C. SNYDER and J. W. BRIERLEY, Appellants.

(151 P. (2d) 776)

On Rehearing July 12, 1944.

680

Verner R. Clements and Durham & Hyatt for appellants.

Frank F. Kimble, and Cox, Ware & Stellmon for respondents.

DUNLAP, J.—Respondents, husband and wife, brought this action against appellants and one Jim St. Clair, upon whom process in this action was not personally served, to collect the balance claimed to be due on a written contract evidencing the sale by respondents as vendors, to St. Clair as vendee, of a stock of general merchandise in respondents' place of business at Weippe, Idaho. The agreement provides for payment of the merchandise at the inventoried price of $11,389.88 with a down payment of $2,000.00 (which was paid), and the balance, together with 6% interest, in semi-annual payments on June 1st and January 1st of each year.

By the agreement, the vendors also leased to the said St. Clair real property upon which the store containing the business was located and also other buildings used in connection with the business, together with the furniture and fixtures, and a residence house, at an agreed rental of $95.00 per month, beginning December, 1938. The lease was for a period of five years from its date, December 6, 1938.

The contract was not acknowledged by any of the parties, and it definitely appears the real property agreed to be leased was acquired during the marriage relationship of respondents and was their community property.

The complaint alleges a balance due and unpaid on the contract of $8377.06. It also alleges that in violation of the contract, St. Clair had made an assignment and transfer to his creditors, of the merchandise, without payment of the balance due thereon, and after written notice of delinquency and demand for the June 1st, 1941 payment served on St. Clair and appellants.

Other violations of the contract are also pleaded.

The original contract is signed by respondents, as parties of the first part, and by the said Jim St. Clair, as party of the second part, and annexed thereto is the following matter:

"It is understood and agreed that H. C. Snyder and J. W. Brierly are guarantors for the party of the second part and shall and do have the right to take over the contract and they assume the rights of the party of the second part in the event of the default of the party of the second part and that they shall be given notice of such default by the parties of the first part.

> H. C. Snyder
> J. W. Brierley
> Guarantors
>
> E. X. Durant
> Nellie G. Durant
> Parties of First Part.
>
> Jim St. Clair
> Party of Second Part."

At the close of plaintiffs' evidence (respondents here), appellants made a motion for nonsuit, which was denied. After appellants had presented their evidence, and at the close of the trial, appellants renewed their motion for nonsuit, and it was again denied by the court. Whereupon, the respondents, having waived on the trial, all claim for rents, made a motion for a directed verdict and upon this motion, the court directed the jury to bring in a verdict in favor of respondents and against appellants in the sum of $190.20, the balance of the installment due on the contract for the merchandise as of June 1st, 1941, with interest at 6%.

After the verdict, according to the court's instructions, judgment was entered thereon and pursuant thereto, and the appeal is from that judgment.

Appellants allege a number of assignments of error, among them being the assignment that the court erred in not granting the motion for nonsuit on the ground that the written contract was void ab initio because it was an indivisible and entire contract, containing as an inseparable and indivisible part thereof a lease of respondents' community real property, combined with the sale of the mer-

chandise, and that said contract was not acknowledged by respondents, or either of them.

A lease of community real property for more than one year, not acknowledged by the husband and wife, is not enforcible as such. (Sec. 31-913, I. C. A.; *Fargo v. Bennett,* 35 Ida. 359, 206 P. 692; *Burnham v. Henderson,* 47 Ida. 687, 278 P. 221; *Little v. Bergdahl Oil Co.,* 60 Ida. 662, 95 P. (2d) 833; *Abbl v. Morrison,* 64 Ida. 489, 134 P. (2d) 94.)

However, where a contract contains illegal provisions, also a separate legal agreement, the latter will be enforced if no necessity exists for reliance by the party seeking to enforce it upon any of the illegal provisions thereof. (*Municipal Securities Corp. v. Buhl Highway District,* 35 Ida. 377, 208 P. 233; *Fox Film Corp. v. Tri-State Theaters,* 51 Ida. 439, 6 P. (2d) 135; *Edwards v. Mullin,* 220 Cal. 379, 30 P. (2d) 997; *Walker v. W. T. Rawleigh Co.,* 133 Okl. 75, 271 P. 166; *Henshaw v. Smith,* 102 Kan. 599, 171 P. 616; *Mack v. Jastro,* 126 Cal. 130, 58 P. 372; *Walters Nat. Bank v. Bantock,* 41 Okl. 153, 137 P. 717; *Wayman Inv. Co. v. Wessinger & Wagner,* 13 Cal. App. 108, 108 P. 1022.)

Whether a contract is severable or indivisible must be determined from the subject matter of the agreement and the language used therein controls. (*Shaw Supply Co., Inc. v. Morgan,* 48 Ida. 412, 282 P. 492; 13 C. J. pg. 561; 17 C. J. S. p. 785, sec. 331; *Pacific Wharf & Storage Co. v. Standard American Dredging Co.,* 184 Cal. 21, 192 P. 847; *Waybright v. Meek,* 90 Cal. App. 13, 265 P. 370; *Read v. Gibson & Johnson,* Tex. Civ. App., 12 S. W. (2d) 620; *Dorsey v. Clarke,* 223 Ky. 619, 4 S. W. (2d) 748; Page on *Contracts,* 2d Ed., Vol. 4., Sec. 2085, p. 3609.)

Appellants argue the contract and evidence, show it was intended by respondents, that St. Clair was to carry on the business on the leased premises, and relies upon *Orenstein v. Kahn,* 13 Del. C. H. 376, 119 Atl., 444; *Harshbarger v. Rankin,* 50 Ida. 24-30, 293 P. 327; *Spokane Cattle Loan Co. v. Crane Creek Sheep Co.,* 39 Ida. 801-806, 230 P. 772.

In the Orenstein case, where the facts were similar to the facts here, the Court held the contract to be entire and not divisible, and relied upon a provision therein providing for a deposit on the contract for the sale of real estate and merchandise, where a deposit at time of contract was made, and wherein the contract provided, "in case title is not clear,

deposit to be returned," and the Court said "the evident purpose of this clause, was that the whole contract was to be void if the title to the real estate should prove to be defective."

In the Harshbarger case, the contract provided "that each and all of its parts and the consideration shall be common each to the other and inter-dependent."

In *Spokane Cattle Loan Co., v. Crane Creek Sheep Co.,* supra, the contract covered the sale of sheep, horses and other personal property. A separate and stated price was agreed upon for the sheep, and as a part of the consideration to be paid therefor, title to the horses and other personal property was to be passed. This Court held "It is obvious from the terms of the contract itself, and from the evidence as to the circumstances under which the contract was made, that a part of the consideration for the agreement of respondent to pay the specified purchase price for the sheep was the agreement by appellant to deliver without further consideration the horses and other personal property, and that in that respect the consideration for the contract is entire, and the contract is not severable in the sense contended for by appellant."

We do not find like conditions in the contract here. Furthermore, there is nothing in the contract to prohibit St. Clair or the appellants from removing the merchandise and the operation of the business from the real property if they so desire, and no provision for a breach of the contract for such removal.

Neither do we find that the evidence sustains the contention St. Clair was to carry on the business on the leased premises.

Moreover, the rule is that where a contract is capable of two constructions, the one making it valid, and the other void, the first ought to be accepted. (*Pacific Wharf & Storage Co. v. Standard American Dredging Co.,* 184 Cal. 21, 192 P. 847; *Edwards v. Mullin,* 220 Cal. 379, 30 P. (2d) 997; *McVicker v. McKenzie,* 136 Cal. 656, 69 P. 495; 12 Am. Jur., pg. 793, Sec. 251; 17 C. J. S., pg. 735, Sec. 318.)

The contract here pertains to two major propositions, namely, sale of the merchandise for the inventoried and stated price of $11,389.88 and a lease of the real property and the business furniture and fixtures at the stated and agreed rental of $95.00 per month.

■ It is a settled rule of law, that where several things are to be done under a contract, if the money consideration to be paid is apportioned to each of the items to be performed, the covenants are ordinarily regarded as severable and independent. (*Shaw Supply Co., Inc. v. Morgan*, 48 Ida. 412, 282 P. 492; 17 C. J. S., pg. 790, sec. 334; 12 Am. Jur., pg. 872, sec. 317; *Armstrong v. Illinois Bankers Life Assoc.*, 217 Ind. 601, 29 N. E. (2d) 953, 131 A. L. R. 769; *Pacific Wharf & Storage Co. v. Standard American Dredging Co.*, 184 Cal. 21, 192 P. 847; *Grunbaum Bros. Furniture Co., Inc. v. Humphrey Inv. Corp.*, 144 Wash. 620, 258 P. 517; *Loveland v. Warner*, 103 Ore. 638, 204 P. 622, 206 P. 298; Page on *Contracts*, pg 3611, sec. 2088; *Hayden v. Collins*, 90 Utah 238, 63 P. (2d) 223; *McVicker v. McKenzie*, 136 Cal. 656, 69 P. 495; *Minnesota Sandstone Co. v. Clark*, 35 Wash. 466, 77 P. 803; *Barlow Mfg. Co. v. Stone*, 200 Mass. 158, 86 N. E. 306; *Regent Waist Co. v. O. J. Morrison Dept. Store Co.*, 88 W. Va. 303, 106 S. E. 712; *Weil v. Stone*, 33 Ind. A. 112, 69 N. E. 698.)

■ It is our judgment after a careful reading of the contract involved here, that the two provisions above referred to are separable, and that the agreement to lease being unenforcible because of lack of acknowledgment, does not so taint the agreement for the purchase of the merchandise, as to prevent recovery therefor, or avoid the liability of the appellants under the agreement signed by them.

It is contended this agreement which is set out above, is not sufficient to hold appellants as guarantors; that it in fact does not constitute a contract of guaranty, but constitutes only an option in appellants to take over St. Clair's interest in the business in case of his default; that the word "guarantor," as used in the contract, is ambiguous and meaningless; that to charge one person with the debt of another, the undertaking must be clear and explicit (24 Am. Jur. 876) and that the liability of a guarantor is limited to the exact letter of his contract. (*W. T. Rawleigh Medical Co. v. Woodward*, (Mo.), 230 S. W. 647-649.)

The principal contract is signed only by respondents and St. Clair. However, there are several references to guarantors therein; illustrative clauses, are, in effect, as follows;—St. Clair is prohibited from extending credit to customers unless agreeable to his guarantors or the amount is secured; St. Clair is barred from transferring his equity,

without consent of respondents, other than the right to turn the contract to his guarantors. It appears the so-called guaranty contract was signed by appellants before respondents affixed their signatures to the original agreement.

We understand appellants' position here to be that they signed the agreement, under the apprehension they were accepting liability only for the repayment of $2000.00, the down payment which St. Clair borrowed and paid to respondents at the time of the contract; that they had arranged a credit at the bank for St. Clair for this purpose, and that in signing the so-called guaranty, it was their intent as well as the intent of all the parties, that it was to protect them until their liability for the credit arranged, or until the borrowed money had been repaid by St. Clair and they had been relieved from liability; that as security they were granted the option to take an assignment from St. Clair under his contract to purchase, at any time he might default therein; that it was never their intent, or the intent of any of the parties by the clause attached to the agreement to guarantee performance thereof by St. Clair.

The intent of the parties to a written agreement, is, if possible, to be ascertained by the language as contained therein. (12 Am. Jur. pg. 745, sec. 227.) If the Court is unable to determine the meaning of the contract, however, from its terms, then evidence should be received to determine the meaning and intention. (*Molyneux v. Twin Falls Canal Co.*, 54 Ida. 619, 35 P. (2d) 651; *Johansen v. Looney*, 30 Ida. 123, 163 P. 303.) And in construing a written instrument, where the language used is clear, certain and unambiguous the Court will give effect to the language employed according to its ordinary meaning. (*Messinger v. Cox*, 33 Ida. 363, 194 P. 473; *Cottingham v. Smith*, 28 Cal. App. (2d) 345, 82 P. (2d) 479; *Moon Motor Car Co. v. State*, 149 Okl. 190, 1 P. (2d) 358; *People v. Hinderlider*, 98 Colo. 505, 57 P. (2d) 894; *Nunner v. Erickson*, 151 Ore. 575, 51 P. (2d) 839.) The contract is to be given effect according to its terms and the Court can neither substitute nor write a new contract. (*Weed v. Idaho Copper Co.*, 51 Ida. 737, 10 P. (2d) 613; *Sorenson v. Larue*, 43 Ida. 292, 252 P. 494; *Machold v. Farnan*, 14 Ida. 258, 94 P. 170.)

In the case of *First National Bank of Idaho v. Reins*, 42 Ida. 720, 248 P. 9, this Court speaking through Mr. Justice Budge said:

"It has been well settled, in this state and elsewhere, that several instruments made at one and the same time, and having relation to the same subject matter, must be taken to be parts of one transaction and construed together for the purpose of showing the true contract between the parties."

A guarantor is a person bound by the contract of guaranty, and such a contract is an undertaking or promise on the part of the guarantor, which is collateral to a primary or principal obligation on the part of another, and which binds the obligor to performance in event of nonperformance by the other. (24 Am. Jur., pg. 873, sec. 2.) No particular form of expression is necessary to create a guaranty. (28 C. J. 911, sec. 42; 24 Am. Jur., 899, sec. 38; *Sherman Clay & Co. v. Turner,* 164 Wash. 257, 2 P. (2d) 688; *Simpson v. First Nat. Bank,* 94 Ore. 147, 185 P. 913.)

In view of these well settled rules we must hold appellants became guarantors of the principal contract here. The guaranty clause was executed contemporaneously with the principal contract, and prior to the signatures of respondents thereto, and very obviously induced those signatures after and not before its execution. Respondents transferred possession of valuable property to St. Clair, the purchaser, evidently in reliance of the guarantee of appellants that the purchase price would be paid. (See *First Nat. Bank of Chandler v. Cleveland,* 127 Ore. 176, 260 P. 80; *Lamm & Co. v. Colcord,* 22 Okla. 493, 98 P. 355; *Lean v. Geagan,* 20 Cal. App. 260, 128 P. 792.)

However, in the instrument here, both in the original contract and in the appended clause, which was signed by appellants, the language fixing their liability appears clear, certain and unambiguous. It clearly imparts and conveys the idea of assurance and guarantee of payment on the part of the appellants. Both instruments impart the idea that the obligation to respondents there assumed by St. Clair was the one which he contracted in the original instrument.

In neither of these instruments is reference made to St. Clair's obligation to appellants on account of their arrangement of credit on his behalf for the down payment and to so limit and construe either instrument would necessitate the insertion of words and the making by the court of a new contract for the parties. This we can not do.

To adopt appellants' theory on this point would have the effect of reducing the guarantee from one of $11,389.88 to one for the sum of $2000.00, and in effect render respondents' property as security to appellants until such time as they had been made whole for the credit arrangement.

We can not construe the guaranty instrument to be an option as contended by appellants, and to so hold would make it merely rather than obligatory, optional with appellants to assume the contract for payment contrary to what to us seems the plain intent and purpose thereof and of the parties thereto, as expressed in the instrument.

We have carefully examined the case of *Harper v. Independence Development Co.*, 13 Ariz. 176, 108 P. 701, relied upon by appellants to sustain their contention that the instrument here created an option only, and we do not consider that decision as authority under the circumstances here because of the marked difference in the wording, as it clearly appears that the expression intention there was to create an option.

The complaint in this action was filed October 1, 1941; the demurrer was filed on October 23, 1941 and overruled on April 8, 1942, and appellants given until May 1, 1942, to answer. The answer was filed April 30, 1942. After the case had been set for trial and a jury called, and on December 7, 1942, some twelve days before trial, a proposed amended answer was served upon the attorney for respondents, at which time the notice of motion to file same was likewise served, and set for hearing as of December 9, 1942. The motion was resisted by respondents. A supplemental hearing was had on the motion December 16, 1942. The trial court denied the motion to amend upon the grounds of insufficient showing, and this ruling is also assigned as error.

An application to amend a pleading, is directed to the discretion of the Court. (Sec. 5-905, I. C. A., *Craven v. Boss*, 38 Ida. 722, 225 P. 136; *Farmers and Mechanics' Bank v. Gallaher Investment Co.*, 43 Ida. 496, 253 P. 383; *Palmer v. Utah and Northern Ry. Co.*, 2 Ida. 382, 16 P. 553.)

The ruling of the Court upon an application for the filing of an amendment will not be disturbed unless it affirmatively shows that the court has abused its discretion. (*Idaho Trust Co. v. Eastman*, 43 Ida. 142, 249 P. 890; *Todd*

*v. City of Hailey,* 45 Ida. 175, 260 P. 1092; *Marysville Development Co. v. Marotz,* 44 Ida. 469, 258 P. 180; *Hoy v. Anderson,* 39 Ida. 430, 227 P. 1058; *Swanson v. Olsen,* 38 Ida. 24, 220 P. 407; *Rankin v. Caldwell,* 15 Ida. 625, 99 P. 108.)

It is necessary that proper showing be made and that the application is made within a reasonable time before denial of the application for amendment becomes an abuse of discretion. (*Dunbar v. Griffiths,* 14 Ida. 120, 93 P. 654; *Granger v. Erie,* 101 Mont. 170, 53 P. (2d) 443; *Schamoni v. Semler,* 147 Ore. 353, 31 P. (2d) 776; *St. George v. Boucher,* 84 Mont. 158, 274 P. 489.)

We have carefully reviewed and considered the record in connection with appellants' showing, with the filing of the amended answer, and are unable to conclude that the trial court abused its discretion in denying the same.

From what has been said it appears that we must and do hold that appellants' other assignments of error, including assignment No. Three to effect that the Court erred in sustaining respondents' objections to appellants' proof and offers of proof, are without merit.

Judgment affirmed.

Costs to respondents.

Holden, C. J., and Ailshie, J., concur.

Budge, and Givens, JJ., dissent.

## ON REHEARING

### July 12, 1944

DUNLAP, J.—Upon motion of appellants, a rehearing was granted in this case, and the cause was resubmitted at the Lewiston Term on May 25th, 1944.

Appellants have filed an able and exhaustive brief, devoted almost exclusively to the contention the Court erred in its determination that the contract in question was severable and divisible.

It is urged that the Court has misconstrued the intention of the parties to the contract; that apportionment of consideration is not conclusive or controlling in determining whether a contract is entire or severable, and appel-

lants cite Page on *Contracts,* 2d Ed., Vol. 4, p. 3613, sec. 2088, reading as follows: "The rule that apportionment of consideration determines the character of the contract is not an arbitrary rule, however, but it is merely a convenient rule for ascertaining the intention of the parties in most cases. The consideration may be apportioned but the remaining provisions of the contract may show that the contract is entire."

The same authority, sec. 2088, p. 3611, Vol. 4, states: "One of the most certain of the single tests for determining the intention of the parties is whether the consideration on the one side is apportioned to each of the different covenants on the other, or whether the consideration on the one side is the entire consideration for all the covenants upon the other side. If the consideration agreed upon for each covenant is apportioned to each covenant separately, the contract is prima facie severable. If the consideration is not apportioned to the various covenants on the part of the adversary party, the contract is prima facie entire."

In *Pettigrove v. Corvallis Lumber Mfg. Co.,* 143 Ore. 33, 21 P. (2d) 198, the court said: "It is well settled by the decisions cited and by the courts and law writers generally, that, if the part to be performed by one party consists of several distinct and separate items, and the price to be paid by the other is apportioned to each item to be performed, or is left to be implied by law, such a contract will generally be held to be severable."

In considering this matter, Williston on *Contracts,* Rev. Ed., Vol. 3, p. 2416, sec. 862, states: "In case of a contract naturally and accurately severable (such as a contract for the sale of a bill of goods at certain prices for each article) courts incline to hold the contract severable, and to grant a recovery for that portion of the goods actually delivered, less damages for the non-delivery of any portion not delivered. Under all ordinary circumstances this course will re sult in exact justice. The vendor will receive payment for his goods which the vendee has retained, and the vendee will receive compensation for any damage which he has actually suffered."

In *Mattison v. Connerly,* 46 Mont. 103, 126 P. 851, the court said: "In *Hughes v. Mullins,* 36 Mont. 267, 92 P. 758, 13 Ann. Cas. 209, this question was before the Court and the rule was then announced as follows: 'We think a cor-

rect rule for determining whether a contract is entire or severable is announced in 2 Parsons on *Contracts* (8th Ed.), p. 517, as follows: 'If the part to be performed by one party consists of several separate and distinct items, and the price to be paid by the other is apportioned to each item to be performed, or is left to be implied by law, such a contract will generally be held to be severable. * * * And if the consideration to be paid is single and entire, the contract must be held to be entire, although the subject of the contract may consist of several distinct and wholly independent items.' "

It is strongly urged here that the contract in question is entire. In many cases it is difficult to determine whether a contract is entire or severable. It is impossible to lay down a rule which will apply to all cases, therefore each case depends upon the terms of the contract involved. (17 C. J. S., Sec. 331, p. 787.)

Appellants direct our attention to specific clauses in the contract and argue therefrom that these clauses indicate the sale of the merchandise and lease of the real property and equipment are so intertwined as not to admit any intendment of any of the parties to the contract that the same were to be severable.

In 17 C. J. S., Sec. 331, p. 786, the author states: "A contract may be indivisible in certain aspects or for certain purposes although divisible in other aspects or for other purposes. Thus a contract may be entire in the sense that there is but one agreement covering all the terms, and divisible in the sense that the performances are divided into different groups, each set embracing performances which are the agreed exchange for each other." See also *Bianche Bros. v. Gendron*, 292 Mass. 438, 198 N. E. 767, 107 A. L. R. 953; *In re Marshall's Garage*, CCA (2d) Cir., 63 Fed. (2d) 759; *Restatement of the Law*, (Contracts) Vol. 1, Sect. 266, pp. 385, 386; Williston on *Contracts*, Rev. Ed., Vol. 4, Sec. 860-A, p. 2408.

In *Armstrong v. Illinois Bankers Life Co.*, 217 Ind. 601, 29 N. E. (2d) 415, the court said: "In determining whether the questioned instrument shall be considered as constituting but one entire contract or as constituting two or more separate and independent contracts, courts and textbook writers have laid down several rules to guide us. It is said—primarily the question of whether a con-

tract is entire or severable is one of intention to be determined from the language which the parties have used, and also the subject matter of the agreement. Another inquiry is, whether the parties reached an agreement regarding the various items as a whole or whether the agreement was reached by regarding each item as a unit. (2 Williston on *Contracts*, Sec. 863.) Another important factor in the determination of the question is whether the consideration is stated to be given for each part as a separate unit or whether there is a single consideration covering the various parts. In *Thompson v. Fesler*, 1929, 74 Ind. App. 80, 123 N. E. 188, 191, the court said: 'The test chiefly relied upon is whether the parties have apportioned the consideration on the one side to the different covenants on the other. If the consideration is apportioned so that for each covenant there is a corresponding consideration, the contract is severable. If, on the other hand, the consideration is not apportioned, and the same consideration supports all the covenants and agreements, the contract is entire. (3 Page on *Contracts*, Sec. 1484.) A contract is entire when by its terms, nature and purpose, it contemplates and intends that each and all of its parts and the consideration shall be common to each other and interdependent. On the other hand, it is the general rule that a severable contract is one which in its nature and purpose is susceptible of division and apportionment.' "

Our attention is also directed to the rule for ascertaining intention as expressed by the Supreme Court of New Mexico, in the case of *Fancher v. Board of Commissioners*, 28 N. M. 179, 210 P. 237, as follows: "It may be stated generally, that the intention of the parties making a contract is the controlling consideration in determining whether the same is severable or entire. This intention, when properly ascertained, will in all cases determine the question. In ascertaining the intention of the parties resort must necessarily be had to the terms of the contract in the first instance. If they clearly indicate the intention, the question is at once settled. But ordinarily the terms of the contract do not settle the question, in cases like this where many units of service are embraced in the contract. Resort may then be had to the nature of the subject matter; whether the whole quantity, service or thing, as a whole, is of the essence of the contract; and perhaps other tests may be resorted to."

Applying the rules above announced, we turn our attention to the specific contract in question, in this case.

Paragraph Three of the contract expresses two desires of the parties of the first part (respondents here), to-wit: To sell, "the stock of goods, good will of the business carried on and conducted at Weippe, Idaho, by said parties, and further, to rent to the party of the second part (St. Clair) the store, warehouse, dwelling, barn and slaughter house located on the real property heretofore described * * "

In Paragraph Four, St. Clair covenants and agrees to purchase the merchandise and pay therefor the sum of $11,389.88 payable in installments, and in Paragraph Five, respondents lease to St. Clair the store, warehouse, furniture and fixtures, for a period of five years from the date thereof, at a monthly rental of $95.00, said rental to continue for five years unless the contract is forfeited as provided by the terms thereof.

In Paragraph Six, St. Clair agrees to maintain the stock of goods as full and complete as at the time of the sale, and to make an inventory twice a year and submit same to the respondents, and respondents retain the right to enter into and upon the premises at reasonable and seasonable times, to check the inventory or to make the same themselves.

Paragraph Seven reads as follows: "That in the event the parties of the first part desire to sell the real property the party of the second part shall be given the first privilege to purchase the said real property. That the price mentioned for the store and warehouse only is seven thousand five hundred dollars."

The contract as a whole is not a model of clarity but in considering the whole contract and the several specific provisions thereof emphasized by appellants in their brief, we cannot conclude that the contract expresses a determination or intention that the parties considered it as entire or inseparable.

In fact the provision of Paragraph Seven reserving the right in respondents to sell the real estate therein mentioned, if exercised, would obviously terminate the lease, since it does not appear that the vendors' right to sell was limited to a sale subject to the terms of the lease. This reservation of the right in vendors to make the sale was in no way limited as to time or otherwise, except that St. Clair was given the first privilege to purchase. St. Clair

and the other parties to the contract therefore, were charged with information that in the event of a sale to a third party he would not have the legal right to remain in possession of the premises and in which event he would necessarily be required to separate the place of operation of the business from the premises.

If we conclude that it was the intention that the business be maintained in the particular premises and the sale of the merchandise had been conditioned upon the right of St. Clair to continue his lease, then, obviously we must disregard Paragraph Seven. This fact, and the further fact that there was a specific price agreed upon for the payment of the merchandise and a specific price agreed upon for the use and rental of the premises, under the rules above announced would characterize the contract as a severable one, under the authorities heretofore cited.

It is likewise clear that the consideration is apportioned so that for each of the covenants, to-wit: the covenant to sell and the covenant to rent, there is a corresponding consideration. The contract therefore, in its nature and purpose, is susceptible of division and apportionment.

We adhere to our original decision.

Holden, C. J., and Ailshie, J., concur.

Budge and Givens, JJ., dissent.